IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03231-REB-KLM

VICTORIA CARBAJAL,
DEAN CARBAJAL, and
LUIS LEAL,

      Plaintiffs,

v.

MITCHELL R. MORRISSEY, District Attorney for the Second Judicial District, in his official and individual capacities,
JEFFREY WATTS, Investigator for the Second Judicial District, in his individual capacity,
ROBERT FULLER, Investigator for the Second Judicial District, in his individual capacity,
REBEKAH MELNICK, Deputy District Attorney for the Second Judicial District, in her individual capacity,
LARA MULLIN, Deputy District Attorney for the Second Judicial District, in her individual capacity,
MILES FLESCHE, District Administrator and Clerk for the Second Judicial District, in his official capacity,
ANNE MANSFIELD, District Court Judge for the Second Judicial District, in her official and individual capacities,
MICHAEL MARTINEZ, District Court Judge for the Second Judicial District, in his official and individual capacities,
ANDREW KEEFER, Deputy Sheriff for the Denver Sheriff's Department, in his official and individual capacities,
MICHAEL SIMPSON, Detective for the Denver Police Department, in his official and individual capacities,
JAY LOPEZ, Detective for the Denver Police Department, in his official and individual capacities,
GILBERT HAGAN, Detective for the Denver Police Department, in his official and individual capacities,
CAROL DWYER, a co-conspirator with the Second Judicial District Attorney's Office, in her individual capacity,
WELLS FARGO, a corporation,
JANELL KAVANAUGH, Vice President/investigator for Wells Fargo, in her individual capacity,
BRIAN BERARDINI, a co-conspirator with the Second Judicial District Attorney's Office, in his individual capacity,
MICHAEL CARRIGAN, a co-conspirator with the Second Judicial District Attorney's Office, in his individual capacity,
MARIE WILLIAMS, a co-conspirator with the Second Judicial District Attorney's Office, in

-1-

her individual capacity, and
JOHN SUTHERS, Attorney General for the State of Colorado, in his official and individual
capacities,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Dismiss Plaintiffs' Third Amended Complaint** [#101],[1] filed by Defendants Miles Flesche ("Flesche"), Anne Mansfield ("Mansfield"), Michael Martinez ("Martinez"), and John Suthers ("Suthers") (collectively, the "State Defendants");[2] on the **Motion to Dismiss Third Amended Complaint** [#103], filed by Defendant Brian Berardini ("Berardini");[3] on the **Motion to Dismiss Third Amended Complaint** [#105], filed by Defendants Mitchell R. Morrissey ("Morrissey"), Jeffrey Watts ("Watts"), Robert Fuller ("Fuller"), Rebekah Melnick ("Melnick"), and Lara Mullin ("Mullin") (collectively, the "Prosecutor Defendants");[4] on the **Motion to Dismiss the Third Amended Complaint** [#114], filed by Defendant Marie Williams

_____

[1] "[#101]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] Plaintiffs filed a Response [#146] to this Motion [#101], and the State Defendants filed a Reply [#155].

[3] Plaintiffs filed a Response [#143] to this Motion [#103], and Defendant Berardini filed a Reply [#147].

[4] Plaintiffs filed a Response [#144] to this Motion [#105], and the Prosecutor Defendants filed a Reply [#157].

("Williams") and joined by Defendant Michael Carrigan ("Carrigan") [#116];[5] on the **Motion to Dismiss Plaintiffs' Third Amended Complaint Pursuant to Rule 12(b)(6)** [#119], filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Carol Dwyer ("Dwyer"), and Janell Kavanaugh ("Kavanaugh") (collectively, the "Wells Fargo Defendants");[6] and on the **Motion to Dismiss Plaintiff's Third Amended Complaint** [#123], filed by Defendants Andrew Keefer ("Keefer"), Michael Simpson ("Simpson"), Jay Lopez ("Lopez"), and Gilbert Hagan ("Hagan") (collectively, the "Denver Defendants").[7]

The Motions have been referred to this Court for recommendation [#102, #104, #107, #115, #120, #124] pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3.  The Court has reviewed the Motions, Responses, Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that Motion [#123] be **GRANTED in part and DENIED in part**, as outlined below, and that Motions [#101, #103, #105, #114, #119] be **GRANTED**.

## I. Summary of the Case

Plaintiff Dean Carbajal ("Mr. Carbajal") is a state prisoner currently incarcerated at the Arkansas Valley Correctional Facility in Ordway, Colorado.  *Third Am. Compl.* [#90] at

---

[5]  Plaintiffs filed a Response [#128] to this Motion [#114], and Defendant Williams filed a Reply [#132], which Defendant Carrigan joined [#134].

[6]  Plaintiffs filed a Response [#142] to this Motion [#119], and the Wells Fargo Defendants filed a Reply [#156].

[7]  Plaintiffs filed a Response [#146] to this Motion [#123], and the Denver Defendants filed a Reply [#160].  The Court later struck the Response [#146], and it is not considered in connection with this Recommendation.  *See Order* [#162].

2; *Notice* [#137].  His mother Victoria Carbajal ("Ms. Carbajal") and family friend Luis Leal ("Mr. Leal") are also plaintiffs in this action.  *Id.*  All three proceed as pro se litigants.[8]

At the outset, the Court notes that Plaintiffs' Third Amended Complaint [#90] is comprised of fifty-nine, often densely-packed pages of material, and it contains a "rambling, massive collection of facts" arranged under several different organizational schemes. *Mitchell v. City of Colo. Springs, Colo.*, 194 F. App'x 497, 498 (10th Cir. 2006) (quotation omitted).  Further, the Third Amended Complaint "mixes allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way," *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996), so that often "its true substance, if any, is well disguised," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  "The general rule that pro se pleadings must be construed liberally has limits, and the Court cannot take on the responsibility of serving as [a] litigant's attorney in constructing arguments and searching the record."  *McConnell*, 2011 WL 1060667, at *3 (internal quotation omitted). Nevertheless, although under no duty to do so, the Court has done its best to carefully review every page of the Third Amended Complaint to ascertain Plaintiffs' claims and to determine whether each is viable.  *See Windsor v. Colo. Dep't of Corr.*, 9 F. App'x 967, 968 (10th Cir. 2001) (quoting a Magistrate Judge's statement that "neither the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in

---

[8] The Court must construe the filings of pro se litigants liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigants' advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigants'] complaint or construct a legal theory on [their] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

order to glean a clear and succinct statement of each claim for relief"); *Klen v. Colo. State Bd. of Agric.*, No. 05-cv-02452-EWN-CBS, 2007 WL 2022061, at *23 (D. Colo. July 9, 2007) ("This court has neither the duty nor the inclination to scan the entire record in search of support for Plaintiff's . . . claim[.]").

Despite the expenditure of significant time and resources, the Court "cannot be sure that [it has] correctly understood all of the averments" contained in the Third Amended Complaint. *McHenry*, 84 F.3d at 1174. "If [it] has not, Plaintiffs have only themselves to blame." *Id.* "It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format." *Windso*r, 9 F. App'x at 968; *see also Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (stating that a complaint "must explain what each defendant did to [each plaintiff]; when the defendant did it; how the defendant's actions harmed him or her, and what specific legal right [plaintiffs] believe the defendant violated"). Plaintiffs have failed to bear this responsibility, and they have "place[d] an unjustified burden on the Court ... because [it] is forced to select the relevant material from a mass of verbiage." *Salahuddin*, 861 F.2d at 42 (quotation omitted).

According to the Third Amended Complaint,[9] on unspecified dates, Defendant Dwyer and Ms. Holguin,[10] both employees of Defendant Wells Fargo, repeatedly accessed the Carbajal family's[11] Wells Fargo bank accounts and private financial information, without first

---

[9]  The Court notes that relevant allegations are scattered throughout the lengthy, often difficult-to-read Third Amended Complaint.  In the interest of clarity, the Court here provides only a summary of the allegations asserted by Plaintiffs.  More detail on the allegations underlying each claim is provided in the Analysis section below.

[10]  Plaintiffs do not provide Ms. Holguin's first name.

[11]  The "Carbajal family" appears to consist of Mr. Carbajal, his mother Ms. Carbajal, and Martin Carbajal, Mr. Carbajal's father. *Third Am. Compl.* [#90] at 4.  Martin Carbajal is not a litigant

obtaining consent from the family, in order to take the Carbajal family's money and property.[12]  *Third Am. Compl.* [#90] at 4-5.  The Carbajal family tried to report Defendant Dwyer's and Ms. Holguin's actions to authorities, but Defendant Dwyer, Ms. Holguin, and Defendant Watts, an investigator for the State of Colorado's Second Judicial District, responded with unspecified threats of prosecution and harassment.  *Id.*  Plaintiffs assert that Defendants Wells Fargo, Dwyer, Kavanaugh (a vice president and investigator for Wells Fargo), and Watts, along with Ms. Holguin, hid audit reports which demonstrated Defendant Dwyer's and Ms. Holguin's actions, falsified other reports, and lied to various courts about their actions.  *Id.* at 3, 5.

Some time around July 1-12, 2010, Mr. Carbajal was charged with the crime of burglary.[13]  *Id.* at 17.  In August 2010, Mr. Carbajal was arrested,[14] allegedly without a warrant, on numerous charges after he delivered a bag with $10,000 to Ms. Holguin, allegedly in response to her threats and demands.  *Id.*  Plaintiffs assert that, to prevent Mr. Carbajal's release, Defendants Simpson, Watts, and Lopez, along with Officer O'Neill, caused numerous criminal cases (10MJ0759, 10CR3823, 10CR3824, 10CR3825, and 10CR3859) to be filed against him in county court, in each of which an excessive bond was ordered to ensure that he would not be released before trial.  *Id.* at 17, 30.  On September

---

in this matter.

[12]  The allegations are unclear as to how much money and property (if any) was actually taken from the family's bank accounts.

[13]  Or, this is the time frame in which Mr. Carbajal was alleged to have committed the burglary or, possibly, burglaries.  The allegations here are unclear.

[14]  This arrest appears to have been unrelated to the burglary commission/arrest in July, but again, the allegations are unclear.

9, 2010, Defendants Mullin, Melnick, and Morrissey (attorneys for the State's Second Judicial District) chose one of those cases (10CR3824) to prosecute against Mr. Carbajal. *Id.* at 17.  According to Mr. Carbajal, this one case included all of the counts from his other pending cases (10MJ0759, 10CR3823, 10CR3825, and 10CR3859).  *Id.* at 17, 31.  The last three named cases were dismissed on September 15, 2010 by the county court.  *Id.* at 17, 31.  Plaintiffs aver that Mr. Carbajal was not provided with notice of these dismissals and that the bonds on these matters were not removed from the system, hindering Mr. Carbajal's ability to obtain pretrial release. *Id.* at 17.  The fourth case, 10MJ0759, was also dismissed without notice to Mr. Carbajal on September 24, 2010.  *Id.*  Plaintiffs aver that Defendants Mullin and Melnick did not schedule or hold a preliminary hearing on any matter within thirty days, as they were allegedly required to do, and that they later refiled this last action in district court by way of an "information." *Id.* at 6.

On December 8, 2010, Mr. Carbajal was in custody at the Denver District Courthouse preparing to enter the courtroom for his criminal trial in yet another case, 2010CR1600, for which he had been arrested on or around April 8, 2010.[15] *Id.*  Mr. Carbajal was escorted to the holding area to retrieve his necktie and, as he was returning, he bent over to tie his shoe and was kneed in an unidentified location by Defendant Keefer (a Deputy Sheriff for the Denver Sheriff's Department).  *Id.*  Then, as Mr. Carbajal attempted to tie his necktie, Defendant Keefer "forcefully grabbed Mr. Carbajal's arm, then stepped back and jumped at Mr. Carbajal, striking him repeatedly in the head." *Id.*  Mr.

---

[15]  Although not completely clear, it appears therefore that three different arrests of Mr. Carbajal are referenced in this matter: (1) on April 8, 2010, (2) in early July 2010, and (3) on August 28, 2010.

Carbajal collapsed as Defendant Keefer slammed him against the wall and forced him to the ground. *Id.*

At his trial immediately following this incident, Plaintiff was found guilty of the following charges: (1) "False Imprisonment-force + 12 hours," and (2) "Assault 3-know/reckless Cause Injury."[16] [#24-1].[17] On January 24, 2011, Mr. Carbajal was attending the sentencing hearing for this case (10CR1600) when he moved for the recusal of Defendant Mansfield, the judge presiding over the matter. *Third Am. Compl.* [#90] at 7. Plaintiffs assert that Mr. Carbajal and Mr. Leal protested Defendant Mansfield's partiality, although Plaintiffs do not clarify how Mr. Leal was otherwise involved in the proceeding. *Id.*

On July 27, 2011, Ms. Carbajal and Mr. Leal were arrested for contempt of court for failing to appear to testify in response to a subpoena. *Id.* at 10.  Plaintiffs argue that the trial at which they were to testify had been vacated, and thus that Ms. Carbajal and Mr. Leal were arrested under false pretenses. *Id.* In August 2011, the charges against Ms. Carbajal and Mr. Leal were dismissed in their favor. *Id.* at 17.

On August 29, 2011, Mr. Carbajal, Ms. Carbajal, and Mr. Carbajal's father Martin Carbajal filed a civil lawsuit against Defendant Wells Fargo, Defendant Dwyer, Ms. Holguin, and others for Fourth Amendment invasion of privacy, Fourteenth Amendment intentional infliction of emotional distress, and a state law claim for breach of fiduciary duty. *See*

---

[16] Mr. Carbajal was acquitted of the charge of "Cruelty/animals-neglect/mistreat" and the District Attorney voluntarily dismissed the charge of "Criminal Mischief-$500-$1000." [#24-1].

[17] The Court may consider documents outside of the Third Amended Complaint on a motion to dismiss when such outside documents are subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

Compl. [#1], *Carbajal v. Wells Fargo*, No. 11-cv-02265-REB-KLM (D. Colo. Aug. 29, 2011). On October 28, 2011, the Carbajals voluntarily moved to dismiss the matter without prejudice, since, due to unspecified "retaliatory actions of the defendants and others acting on their behalf," they thought "it best to resolve this matter informally." *Voluntary Motion to Dismiss Without Prejudice* [#26], *Carbajal v. Wells Fargo*, No. 11-cv-02265-REB-KLM (D. Colo. Oct. 28, 2011). The motion to dismiss without prejudice was granted. *Order of Dismissal Without Prejudice* [#29], *Carbajal v. Wells Fargo*, No. 11-cv-02265-REB-KLM (D. Colo. Nov. 1, 2011).

On November 29, 2011, Mr. Carbajal's trial in criminal case 10CR3824 proceeded, despite Mr. Carbajal's objection to the court's jurisdiction. *Third Am. Compl.* [#90] at 38. In December 2011, Mr. Carbajal was acquitted of the July 2010 burglary charge, although he was convicted of other unspecified charges. *Id.* at 17, 38. Plaintiffs assert that Defendants Mansfield,[18] Flesche (the District Administrator/Clerk for the Second Judicial District), and Suthers (the Attorney General for the State of Colorado) have attempted to "stonewall" Mr. Carbajal's appeal by, in part, "refus[ing] to prepare or turnover transcripts of the trial." *Id.* at 39.

In connection with these and other underlying events, which the Court details in the Analysis section below, Plaintiffs assert claims under 42 U.S.C. § 1983 and other federal

---

[18] This same allegation also appears to be aimed at Defendant Martinez, another state court judge, and it is unclear whether this particular mention of Defendant Mansfield is erroneous. It also seems, but again is unclear, that Defendant Martinez was the judge presiding over Mr. Carbajal's criminal trial in case 10CR3824. Plaintiffs merely make such statements as: "In fact, with absolutely no analysis the Court—District Court Judge Martinez, has denied numerous motions, including, motions for protection orders, motions for sanctions, motions to amend the complaint, and motions to turnover discovery that was produced pursuant to a subpoena duces tecum directed towards the 2nd District Attorney's Office." *Third Am. Compl.* [#90] at 13 ¶ 42.

statutes for malicious prosecution, fraudulent concealment and intentional misrepresentation, unreasonable and/or excessive force, retaliation, and abuse of process. As remedies for their alleged injuries, Plaintiffs seek the following: (a) equitable relief including prospective injunctive relief consisting of the "expungement of complete criminal record;" (b) economic damages; (c) compensatory damages relating to emotional distress, suffering, loss of reputation, humiliation, inconvenience, and mental anguish; (d) punitive damages; (e) interest, attorneys' fees, and costs of litigation; (f) a declaration that Defendant Mansfield and Defendant Martinez are violating Plaintiffs' due process rights and that they are prejudiced toward Plaintiffs; and (g) a declaration that Defendant Suthers and his personnel have violated Mr. Carbajal's due process rights by repeatedly submitting false or gross distortions in court filings. *Id.* at 27.

Defendants move to dismiss Plaintiffs' Third Amended Complaint on the basis of Fed. R. Civ. P. 8(a), 12(b)(1), and 12(b)(6). *Motions* [#101, #103, #105, #114, #119, #123]. The Court addresses the specifics of Defendants' arguments regarding dismissal in the Analysis section below.

## II.  Standard of Review

### A.     Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the court at any point in the proceeding. *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United*

*States*, 46 F.2d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it. Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.      Fed. R. Civ. P. 12(b)(6) and 8(a)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers

to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

"Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim

showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)).  As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible."  *Id.*  Indeed, "Rule 8(a)'s mandate . . . has been incorporated into the 12(b)(6) inquiry."  *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010).  Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims."  *Tuttamore*, 429 F. App'x at 689.

## III.  Analysis

### A.    Pleading Requirements of Rule 8

Defendants assert that the Third Amended Complaint fails to comply with Fed. R. Civ. P. 8(a).  Rule 8 requires "a short and plain statement of the claim"—"plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted," and "short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it."  *Carbajal v. City & Cnty. of Denver*, 502 F. App'x 715, 716 (10th Cir. 2012) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).  When a complaint fails to comply with these requirements, it is "not the district court's job to stitch together cognizable claims for relief from [a] wholly deficient pleading."  *Carbajal*, 502 F. App'x at 716 (quoting *Mann*, 477 F.3d at 1148).  Here, Plaintiffs' Third Amended Complaint is verbose, lengthy, and all-but impenetrable at times, but the Court finds that it is *generally* not so vague and confusing as to violate Rule 8(a).  Plaintiffs have identified the defendants in this matter, have made factual allegations against them (albeit replete with numerous conclusory statements), have stated the causes of action they bring, and have requested specific relief.  Although Plaintiffs leave the Court

with a number of uncertainties when parsing through the Third Amended Complaint, the Court finds that Plaintiffs have, just barely, met the mandates of Rule 8(a).

There is one important issue that the Court must address, however, regarding Plaintiffs' alleged state law claims.  In the Response in opposition to Defendant Williams' Motion [#114], Plaintiffs mention that they have brought particular state law claims against Defendants.  *See Response* [#128] at 1, 11.  However, the Third Amended Complaint certainly is not clear enough to put Defendants on notice that state law claims are purportedly being asserted by Plaintiffs.  *See Tuttamore*, 429 F. App'x at 689 (stating that Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims").

To begin with an example, Claim 1 is titled "28 U.S.C. § 1367 & 42 U.S.C. § 1983—Malicious Prosecution."  *Third Am. Compl.* [#90] at 16.  Thus, in this heading, which covers both Count 1 and Count 2 of Claim 1, Plaintiffs assert that the Court has supplemental jurisdiction over Claim 1 pursuant to 28 U.S.C. § 1367.  However, except for this one oblique reference to jurisdiction over a potential state law cause of action, Plaintiffs fail to assert any state law claim as part of Claim 1.  Under Claim 1, Count 1, Plaintiffs merely state that they "were wrongfully arrested and prosecuted in direct violation of their Fourth and Fourteenth Amendment rights, causing them serious emotional distress amongst other injuries, as alleged herein . . . ."  *Third Am. Compl.* [#90] at 17 ¶ 47.  Under Claim 1, Count 2, Plaintiffs merely state that Mr. Carbajal was subjected "to a wrongful prosecution for burglary in direct violation of Mr. Carbajal's Fourth and Fourteenth Amendment rights, causing great injuries, as alleged herein . . . ."  *Id.* at 17 ¶ 49; *see also id.* at 18 ¶¶ 50, 52.  Thus, Plaintiffs explicitly bring federal constitutional claims and make

no allusion to any assertion of state law causes of action. To the extent that Plaintiffs may have been improperly attempting to use 28 U.S.C. § 1367 as a basis for federal court jurisdiction over their § 1983 Fourth and Fourteenth Amendment claims, Plaintiffs additionally (and properly) cite 28 U.S.C. § 1331 as a basis for federal court jurisdiction over these federal claims. *See id.* at 4 ¶ 23. In light of Plaintiffs' explicit statements of their causes of action under Claim 1, the Court cannot find, without more, that Plaintiffs have put Defendants on notice of any state law claims.

The same reasoning applies to Plaintiffs' other claims, in which they only assert federal causes of action and make no allusion to state law other than to assert supplemental jurisdiction. *See id.* at 19 ¶ 56 (stating under Claim 2 that certain Defendants' actions violated "Plaintiffs' First and Fourteenth Amendment rights, causing the injuries alleged herein, including, emotional distress and embarrassment"), 21 ¶ 68 (stating under Claim 4(a)[19] that certain Defendants' actions "had the direct effect of oppressing and discouraging the Plaintiffs from asserting their protected rights, which, is a transgression of the Plaintiffs' First, Fifth, and Fourteenth Amendment rights"), 22 ¶ 69 (stating under Claim 4(a), Count 1 that certain Defendants' actions directly violated "Plaintiffs' First and Fourteenth Amendment rights"), 22 ¶ 70 (stating under Claim 4(a), Count 2 that certain Defendants directly violated "Plaintiffs' First, Fifth, and Fourteenth Amendment rights"), 23 ¶¶ 71-73 (stating three times under Claim 4(a), Count 3 that certain Defendants violated Plaintiffs' "First, Fifth, and Fourteenth Amendment rights"), 25 ¶ 82 (stating under Claim 4(b), Count 1 that certain Defendants "directly violated [Mr. Carbajal's] Fourth and

---

[19] Plaintiffs list two fourth claims, which the Court designates as Claim 4(a) and Claim 4(b).

Fourteenth Amendment rights to be free from pretrial detention following arrest without a prompt determination of probable cause"), 25 ¶ 83 (stating under Claim 4(b), Count 2 that Defendant Mansfield violated "Plaintiffs' due process rights under the Fifth and Fourteenth Amendment"), 26 ¶ 84 (stating under Claim 4(b), Count 3 that certain Defendants violated Plaintiffs' "First, Seventh, and Fourteenth Amendment rights, causing them serious emotional distress amongst other injuries"), 24 ¶ 75 (stating under Claim 5 that certain Defendants violated "Plaintiffs' civil rights under the Fourth, Fifth, and Fourteenth Amendments, as follows" in the three counts), 24 ¶ 76 (stating under Claim 5, Count 1 that certain Defendants violated "Mr. Carbajal's Fourth, Fifth, and Fourteenth Amendment rights"), 24 ¶ 77 (stating under Claim 5, Count 2 that certain Defendants violated "Mr. Carbajal's Fourth, Fifth, and Fourteenth Amendment rights"), 24 ¶ 78 (stating under Claim 5, Count 3 that the actions of certain Defendants "had the direct effect of violating Mr. Carbajal's Fourth, Fifth, and Fourteenth Amendment rights").

Plaintiffs explicitly assert under each of these claims that Defendants violated multiple federal constitutional rights, but, other than vague allusions to 28 U.S.C. § 1367, Plaintiffs fail to properly assert any state law claims. *See Mobley*, 40 F.3d at 340 (stating that Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true"). If Plaintiffs were nevertheless attempting to assert state law claims, the Third Amended Complaint is plainly deficient because it fails to put Defendants on notice of the claims against them. Indeed, the Court notes that although Defendants have vigorously contested and sought full dismissal of Plaintiffs' federal causes of action, none of the them has addressed Plaintiffs' state law causes of action, thus indicating that Plaintiffs' Third Amended Complaint fails to clearly articulate

state law claims. "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Carbajal*, 502 F. App'x at 716 (quoting *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007)). Plaintiffs have failed to do so here, and the Court and Defendants should not be forced to play a guessing game as to whether Plaintiffs have asserted particular claims. *See Whitney*, 113 F.3d at 1173-74 (stating that the Court should not construct a legal theory on behalf of pro se litigants).

Accordingly, the Court **recommends** that the Motions be **granted** to the extent that any state law claims purportedly made in connection with Claims 1, 2, 4(a), 4(b), and 5 be **dismissed without prejudice**.[20] *Carbajal*, 502 F. App'x at 716 (quoting *Atkins v. Nw. Airlines, Inc.*, 967 F.2d 1197, 1203 (8th Cir. 1992) ("A dismissal without prejudice under Rule 8 is within the sound discretion of the trial court.")).

Thus, the following seven claims (most with multiple subparts) are at issue in this law suit: (1) Claim 1: malicious prosecution under 42 U.S.C. § 1983, consisting of: (a) Count 1: malicious prosecution for contempt of court against Defendants Watts, Mullin, Fuller, Melnick, and Morrissey, and (b) Count 2: malicious prosecution for burglary against Defendants Hagan, Watts, Mullin, Melnick, Morrissey, Dwyer, Kavanaugh, and Berardini; (2) Claim 2: fraudulent concealment and intentional misrepresentations under 42 U.S.C. § 1983 and 12 U.S.C. §§ 501a, 503 against Defendants Mullin, Melnick, Watts, Morrissey, Fuller, Dwyer, Kavanaugh, and Berardini; (3) Claim 3: unreasonable and/or excessive force under 42 U.S.C. § 1983 against Defendants Keefer, Mullin, Watts, Mansfield, and

---

[20]  Plaintiffs do not reference 28 U.S.C. § 1367 in connection with Claim 3.

Morrissey; (4) Claim 4(a): retaliation under 42 U.S.C. § 1983, consisting of: (a) Count 1: retaliation through threats, intimidation, and fraud against Defendants Dwyer, Kavanaugh, Watts, Fuller, Morrissey, and Berardini, (b) Count 2: retaliation based on false arrest for contempt of court against Defendants Mullin, Fuller, Watts, Melnick, Morrissey, and Mansfield, and (c) Count 3: retaliation based on malicious stonewalling of litigation against Defendants Mansfield, Flesche, Martinez, Mullin, Melnick, Morrissey, Williams, and Carrigan; (5) Claim 4(b): due process violation under 42 U.S.C. § 1983, consisting of: (a) Count 1: due process violation based on denial of prompt determination of probable cause against Defendants Simpson, Lopez, Hagan, Melnick, Watts, Mullin, and Morrissey, (b) Count 2: due process violation based on Defendant Mansfield's "bent mind" toward Plaintiffs, and (c) Count 3: due process violation based on suppression and destruction of material evidence against Defendants Watts, Morrissey, Dwyer, Kavanaugh, Wells Fargo, Berardini, Williams, and Carrigan; (6) Claim 5: abuse of process under 42 U.S.C. § 1983, consisting of: (a) Count 1: abuse of process based on the improper filing of "shelf cases" against Defendants Morrissey, Mullin, Melnick, Watts, Lopez, and Simpson, (b) Count 2: abuse of process based on improper direct filing of case 10CR3824 against Defendants Mullin, Melnick, Watts, and Morrissey, and (c) Count 3: abuse of process based on misuse of a frivolous burglary charge by Defendants Hagan, Watts, Mullin, Melnick, Morrissey, and Mansfield.

**B.    Subject Matter Jurisdiction**

The Court begins its analysis of Plaintiffs' claims by examining whether the Eleventh Amendment deprives it of subject matter jurisdiction over claims made against state officials.  As relevant here, Plaintiffs seek monetary damages against Defendants Flesche,

Mansfield, Martinez, and Suthers as well as declaratory relief against Defendants Mansfield and Suthers and injunctive relief against Defendants Mansfield, Martinez, and Flesche. *Third Am. Compl.* [#90] at 27.

"Suits against state officials in their official capacit[ies] should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983). Thus, pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in their official capacities. *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Specifically, Eleventh Amendment immunity bars claims against individuals sued in their official capacities "for money damages and relief for prior acts." *See Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 781 (10th Cir. 2008). Thus, the Eleventh Amendment forbids judgments against state officers declaring that they violated federal law in the past. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

With respect to the declaratory relief sought against Defendant Suthers, the Eleventh Amendment forbids the relief because Plaintiffs are seeking a declaration that Defendant Suthers violated Mr. Carbajal's federal rights in the past. *See Third Am. Compl.* [#90] at 27 (stating that Plaintiffs are seeking a "[d]eclaration that [Defendant] Suthers and his personnel have violated Mr. Carbajal's due process rights by repeatedly submitting false or gross distortions in their answer briefs and pleadings").

With respect to Defendant Mansfield, although Plaintiffs state their claim for

declaratory relief against her in the present tense, the Court finds no allegations in the Third Amended Complaint that demonstrate any present and continuing action by her against Plaintiffs.  Plaintiffs' request for declaratory relief is not made in connection with a particular claim.  The request merely seeks "[a] declaration that Mansfield . . . [is] violating the Plaintiffs' due process rights under the Fifth and Fourteenth Amendment, and that [she is] prejudice[d] towards the Plaintiffs."  *Third Am. Compl.* [#90] at 27 ¶ 88.  However, as regards this claim, Plaintiffs discuss actions taken by Defendant Mansfield (and others) that occurred in the past.  For example, Plaintiffs raise the issue of Ms. Carbajal and Mr. Leal's alleged "wrongful arrest and prosecution" for contempt of court, but those charges were dropped in August 2011.  Plaintiffs also raise the issue of the use of an "invalid subpoena," although any connection between Defendant Mansfield and the subpoena is extremely vague.  Regardless, there is no way to connect this issue with any *ongoing* Fifth or Fourteenth Amendment violation.  To state a claim against Judge Mansfield for declaratory relief, Plaintiffs must show that there is an existing case or controversy.  *See Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 796 (10th Cir. 2013) (citing *Schepp v. Fremont Cnty.*, 900 F.2d 1448, 1452-53 (10th Cir. 1990) (holding claim against judge for declaratory relief was moot given the remote possibility the plaintiff would again be subjected to probation revocation proceedings before the same judge)).  They have not done so here.  Thus, the Eleventh Amendment forbids declaratory relief against Defendant Mansfield.

Finally, Plaintiffs appear to seek injunctive relief in the nature of mandamus against Defendants Flesche, Martinez, and/or Mansfield in their official capacities regarding submission of the record from Mr. Carbajal's criminal case (10CR3824) to the appellate court.  *Third Am. Compl.* [#90] at 39.  However, the Court has "no authority to issue such

a writ to direct state courts or their judicial officers in the performance of their duties." *Knox v. Bland*, 632 F.3d 1290, 1292 (2011) (quoting *Van Sickle*, 791 F.2d at 1436 n.5; citing *Olson v. Hart*, 965 F.2d 940, 942 (10th Cir. 1992) ("Federal courts have no authority to issue a writ of mandamus to a state judge.")).

Accordingly, the Court **recommends** that Plaintiffs' claims seeking monetary relief against Defendants Flesche, Mansfield, Martinez, and Suthers in their official capacities, Plaintiffs' claims for declaratory relief against Defendants Suthers and Mansfield, and Plaintiffs' claims for injunctive relief against Defendants Flesche, Mansfield, and Martinez be **dismissed without prejudice** for lack of subject matter jurisdiction.[21]   *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice." (citations omitted)).

## C.    Claim 1, Count 1: Malicious Prosecution for Contempt of Court

Claim 1, Count 1 is a Fourth and Fourteenth Amendment section 1983 claim brought by Ms. Carbajal and Mr. Leal against the Prosecutor Defendants: Mullin, Melnick, Watts, Morrissey, and Fuller.  *Third Am. Compl.* [#90] at 16-17 ¶¶ 46-47.  Plaintiffs primarily allege the following about this claim:

> On July 27, 2011, Mullin, Melnick, Watts, and Fuller, under the direction and/or approval of Morrissey, worked together in a concerted effort to falsely arrest Mr. Leal and Ms. Carbajal as means to harass the Plaintiffs and punish them for their protesting and efforts to redress grievance.  The Plaintiffs Mr. Leal and Ms. Carbajal were arrested falsely for contempt of Court.  No legal

---

[21]  Because Defendant Flesche is sued only in his official capacity, *see Third Am. Compl.* [#90] at 2 ¶ 9, and because the Court has found that Plaintiffs cannot obtain monetary or injunctive relief (and do not seek declaratory relief) from him on any claim, the Court need not address the merits of any claim against him in the remainder of the Recommendation.

basis existed to arrest or charge these citizens with any action, but with an evil intent to cause division and injure the Plaintiffs.  The prosecution [sic] Mullin, Melnick, Watts, Fuller, and Morrissey worked together in a concerted effort to manufacture false contempt charges, premised on the fallacy that Mr. Leal and Ms. Carbajal refused to appear at trial to testify pursuant to a subpoena.   In furtherance of this conspiracy Melnick presented false information ex parte to the Court and in an affidavit stating that Ms. Carbajal and Mr. Leal failed to comply with a subpoena and appear at court for needed testimony, and intentionally omitted information that no trial existed, but had been vacated, with knowledge that no legal basis existed to institute contempt proceedings, in that, no legal obligation existed requiring appearance to a nonexistent hearing where no testimony is needed.  More [sic], it is improper to use a subpoena to secure a witness' appearance where no testimony is needed and no hearing exists.  Still the Prosecution pursued and effected this malicious and abusive process with the intent and understanding to wrongfully arrest and prosecute Ms. Carbajal and Mr. Leal, and punish the Plaintiffs for protesting Mansfield's conduct and joint effort to prove Mr. Carbajal's innocence, as well as for their civil actions.  But primarily to damage Mr. Carbajal's defense . . . .

*Id.* at 10 ¶ 37; *see also id.* at 37-38 ¶¶ 30, 32.  The Prosecutor Defendants assert the

defenses of statute of limitations and prosecutorial immunity with respect to this claim.

*Motion* [#105] at 7-8, 9-11.

## 1.    Statute of Limitations

Defendants argue in part that Plaintiffs' Claim 1, Count 1 is barred by the statute of

limitations.  *Id.* at 7.  Although the statute of limitations is an affirmative defense, the issue

may be resolved on a motion to dismiss where the application of the limitations period is

apparent on the face of the complaint.  *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir.

2008).

Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal

injury limitation period of the state in which the action arose.  *Hunt v. Bennett*, 17 F.3d

1263, 1265 (10th Cir. 1994).  In Colorado, the limitation on a personal injury claim brought

pursuant to section 1983 is two years.  *See* Colo. Rev. Stat. § 13–80–102(g) (creating a

two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *see Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13–80–102 to a section 1983 claim). However, federal law rather than state law determines when a cause of action accrues. *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994).   Federal law provides that "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969.   That is, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted).

This case was filed with the Court on December 11, 2012. *See Compl.* [#1].   Under normal circumstances, all § 1983 causes of action in this matter must have accrued no earlier than December 11, 2010.   However, under the mailbox rule, an inmate who places a legal document "in the prison's internal mail system will be treated as having 'filed' [the document] on the date it is given to prison authorities for mailing to the court." *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)).   "[T]he inmate must attest that such a timely filing was made and has the burden of proof on this issue." *Price*, 420 F.3d at 1165.   "In order to establish timely filing, an inmate must either (1) prove that he made timely use of the prison's legal mail system if a satisfactory system is available; or (2) if a legal mail system is not available, prove timely use of the prison's regular mail system by submitting a notarized statement or a declaration under penalty of perjury indicating the date on which the document was given to prison

officials for mailing." *Davis v. Jones*, 421 F. App'x 829, 831 (10th Cir. 2011) (citing *Price*, 420 F.3d at 1165).   Here, Plaintiffs' initial Complaint is stamped and signed by a staff member at CDOC's Sterling Correctional Facility as having been received by the facility for mailing on December 8, 2012.  *Compl.* [#1] at 27.  Accordingly, the Court finds that, for the purpose of determining the applicable statute of limitations, Plaintiffs' lawsuit was deemed filed as of December 8, 2012.  Thus, Plaintiffs' § 1983 claims must have accrued no earlier than December 8, 2010.

Plaintiffs' Claim 1, Count 1 is for malicious prosecution.  *Third Am. Compl.* [#90] at 16-18.  "[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor."  *Heck v. Humphrey*, 512 U.S. 477, 489 (1994).  In their first count, Plaintiffs assert that the charges of contempt of court that lead to the arrest and prosecution of Ms. Carbajal and Mr. Leal were dismissed in their favor in August 2011.  *3d Am. Compl.* [#90] at 16-17.  Because the dismissal of these charges occurred after December 8, 2010, the Court finds that Claim 1, Count 1 is not barred by the statute of limitations.

## 2.      Prosecutorial Immunity

The Prosecutor Defendants next argue that they are entitled to prosecutorial immunity.  *Motion* [#105] at 9-11.  "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been

made." *Id.* Absolute prosecutorial immunity extends to bar claims that a prosecutor "knowingly used false testimony and suppressed material evidence." *Imbler v. Pachtman*, 424 U.S. 409, 413 (1976); *see, e.g.*, *Third Am. Compl.* [#90] at 16 ¶ 46 (alleging that the Prosecutor Defendants "manufactured and presented false and distorted evidence," which is squarely protected by absolute prosecutorial immunity). Further, absolute prosecutorial immunity applies to protect prosecutors from the outset of a criminal case: "The decision of a prosecutor to file criminal charges is within the set of core functions which is protected by absolute immunity." *Williams v. Hartje*, 827 F.2d 1203, 1209 (1987). "This is so even if the prosecutor makes that decision in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of his jurisdiction." *Id.*; *see Third Am. Compl.* [#90] at 16 ¶ 47 (alleging that the Prosecutor Defendants had "the intent and understanding to wrongfully arrest and prosecute Mr. Leal and Ms. Carbajal"). Thus, prosecutorial immunity is applicable even if it leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427; *see also Cambell v. Maine*, 787 F.2d 776, 778 (1st Cir. 1986) (stating that there is no bad faith exception to absolute immunity of prosecutor).

After carefully reviewing the Third Amended Complaint, the Court finds that this claim against Defendants Watts, Mullin, Fuller, Melnick, and Morrissey is based entirely on their conduct during the performance of their official duties as prosecutors and, therefore, that they are entitled to absolute prosecutorial immunity.[22] *See Imbler*, 424 U.S. at 419

---

[22] There is an exception to prosecutorial immunity, however. "[A] claim based on a prosecutor's alleged destruction of exculpatory evidence does not fall within the broad protection provided by prosecutorial immunity." *Carbajal v. Seventh Judicial Dist.*, No. 10-cv-02862-REB-KLM, 2011 WL 5006992, at *2 (D. Colo. Oct. 19, 2011) (citing *Yarris v. Cnty. of Delaware*, 465 F.3d

n.13 (stating that "[a]n absolute immunity defeats a suit at the outset").  Accordingly, the

Court **recommends** that Claim 1, Count 1 by Ms. Carbajal and Mr. Leal against

Defendants Watts, Mullin, Fuller, Melnick, and Morrissey be **dismissed with prejudice** on

the basis of prosecutorial immunity.  *See Thome v. Cook*, No. 11-cv-03320-REB-MEH,

2013 WL 1154481, at *9 (D. Colo. Mar. 19, 2013) (dismissing claims with prejudice on the

basis of prosecutorial immunity).

### D.    Claim 1, Count 2: Malicious Prosecution for Burglary

Claim 1, Count 2 is a Fourth and Fourteenth Amendment section 1983 claim brought

by Mr. Carbajal, Ms. Carbajal, and Mr. Leal against Defendants Mullin, Melnick, Watts,

Morrissey, Hagan, Dwyer, Kavanaugh, and Berardini.  *Third Am. Compl.* [#90] at 17 ¶ 48.

Plaintiffs primarily make the following allegations about this claim:

> The Prosecution [sic] Watts, Melnick, and Mullin, under the direction and
> approval of Morrissey, filed frivolous habitual and false burglary charges.
> Specifically, these parties together with Detective Hagan filed false and
> distorted information before the Court and judicial officers, and presented
> perjured testimony at a preliminary hearing regarding an alleged false
> burglary that was falsely reported by Holguin in July 2010.  In fact, the
> Prosecution and the Detective Hagan knew that no evidence existed that
> would link Mr. Carbajal to this burglary and that this abuse was staged by
> Holguin and her family.  The alleged stolen property that was reported as
> stolen were [sic] hidden and found at Holguin's mother's home, with only her
> fingerprints on the boxes used to store this property.  Holguin, also,
> confessed that Mr. Carbajal had nothing to do with this staged burglary.  Still
> with knowledge that Mr. Carbajal was innocent of this charge and that no
> reasonable basis existed to charge this false charge, the Prosecution and
> Hagan, under the direction and/or approval of Morrissey, filed false charges

---

129, 136-137 (3d Cir. 2006); *Masters v. Gilmore*, 663 F. Supp. 2d 1027, 1039-1040 (D. Colo. 2009).
Here, Ms. Carbajal and Mr. Leal appear to stop short of asserting that the Prosecutor Defendants
destroyed exculpatory evidence in connection with Claim 1, Count 1.  Thus, this exception does not
apply.  To the extent that Plaintiffs *may* have intended to invoke this exception to prosecutorial
immunity, the Court finds that they have only made conclusory statements regarding the Prosecutor
Defendants' handling of evidence pertaining to the events underlying Claim 1, Count 1.

for burglary that allegedly occurred in July 2010, thereby evincing a complete disregard for the truth . . . .

*Id.* at 8-9 ¶ 35; *see also id.* at 36 ¶ 25.

### 1.    Fourteenth Amendment

Plaintiffs state that they bring this claim under the Fourth and Fourteenth Amendments. *See Third Am. Compl.* [#90] at 17 ¶ 49, 18 ¶ 52. First, Plaintiffs make no allegations whatsoever which support a claim for malicious prosecution of Ms. Carbajal and Mr. Leal for burglary. The Third Amended Complaint states that only Mr. Carbajal was prosecuted for this alleged offense. Second, an attempt to invoke the protections of the Fourteenth Amendment in addition to the more specific constitutional guarantees provided by the Fourth Amendment is inappropriate. *See Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2013 WL 4799654, at *6 (D. Colo. Sept. 6, 2013). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation and internal quotation marks omitted). Mr. Carbajal's malicious prosecution claim is properly cognizable under the Fourth Amendment, not the Fourteenth. *St. Anthony Cent. Hosp.*, 2013 WL 4799654, at *6. The Fourteenth Amendment's generalized protections against violations of due process are not specifically tailored to his claim here, and do not provide "an explicit textual source of constitutional protection against [the] particular sort of government behavior" that he is alleging. *Albright*, 510 U.S. at 273 (citation and internal quotation marks omitted). Accordingly, the Court respectfully **recommends** that Ms Carbajal and Mr. Leal's Fourteenth Amendment claim

for malicious prosecution for burglary be **dismissed with prejudice**, and that Mr. Carbajal's Fourteenth Amendment portion of Claim 1, Count 2 against Defendants Watts, Mullin, Fuller, Melnick, Morrissey, Hagan, Dwyer, Kavanaugh, and Berardini be **dismissed with prejudice**. *See Olds v. Esslinger*, No. 09-cv-01472-CMA-CBS, 2010 WL 749829, at *5 (D. Colo. Mar. 4, 2010) (dismissing with prejudice a claim to the extent that the plaintiff had "improperly identified the Fourteenth Amendment" as the claim's source of applicable law).

### 2.   Statute of Limitations

Defendants argue in part that Plaintiffs' Claim 1, Count 2 is barred by the statute of limitations.  As already discussed, Plaintiffs' § 1983 claims must have accrued no earlier than December 8, 2010.  Claim 1, Count 2 is for malicious prosecution.  Mr. Carbajal asserts that he was acquitted of the charge of burglary in December 2011.  *Id.* at 17 ¶ 48. Because Mr. Carbajal's acquittal on this charge occurred after December 8, 2010, the Court finds that his Claim 1, Count 2 is not barred by the statute of limitations.

### 3.   Fourth Amendment: Prosecutorial Immunity

The Prosecutor Defendants assert prosecutorial immunity, and the Court comes to the same conclusion as it did with respect to Claim 1, Count 1 in Section III.C.2. above. After carefully reviewing the Third Amended Complaint, the Court finds that this claim against Defendants Watts, Mullin, Melnick, and Morrissey is entirely based on their conduct during the performance of their official duties as prosecutors and, therefore, that they are entitled to absolute prosecutorial immunity.[23]  Accordingly, the Court **recommends** that Mr.

---

[23] For the same reasons cited above in Claim 1, Count 1, the Court finds that the exception to prosecutorial immunity does not apply to Claim 1, Count 2.

Carbajal's Claim 1, Count 2 be **dismissed with prejudice** as to Defendants Watts, Mullin, Melnick, and Morrissey.  *See Thome*, 2013 WL 1154481, at *9.

### 4.   Fourth Amendment: Defendant Hagan

### a.   Qualified Immunity: Individual Capacity

Defendant Hagan asserts qualified immunity.  *Motion* [#123] at 8.  "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'"  *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When the defense of qualified immunity is raised, the Court must consider whether the plaintiffs' factual allegations demonstrate that the defendant violated a constitutional right and, secondly, whether that constitutional right was clearly established at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  Id.  In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that a court may review these factors in any order, using its discretion to determine which of the factors to review first in light of the circumstances of the case. *Id.* at 236.  Because the Court finds that Mr. Carbajal's factual allegations fail to demonstrate that Defendant Hagan violated a constitutional right, the Court does not need to address whether that constitutional right was clearly established at the time of the

alleged violation.

To survive Defendants' Motion pursuant to Rule 12(b)(6), a plaintiff need only "plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support [his] allegations." *Shero*, 510 F.3d at 1200 (citations omitted). Generally, plaintiffs cannot sue police officers for malicious prosecution under section 1983 because "'the chain of causation is broken' between the arrest and the actual prosecution." *Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1207 (D. Colo. 2006) (quoting *Taylor*, 82 F.3d at 1564). In her concurrence in *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring), Justice Ginsburg reasoned that the principal player in carrying out a prosecution is not the police officer but, rather, the prosecutor. Thus, "the anomaly lies in the reality that, under a malicious prosecution claim against an officer, 'the star player is exonerated, but the supporting actor is not.'" *Lopez*, 2012 WL 3277178, at *5 (quoting *Albright*, 510 U.S. at 279 n.5 (Ginsburg, J.,concurring)). *See also Washington v. Summerville*, 127 F.3d 552, 559-60 (7th Cir. 1997). Nonetheless, malicious prosecution claims may be proper if the police officer misrepresents or conceals facts from the prosecutor. *Barton*, 432 F. Supp. 2d at 1207.

Establishment of a Fourth Amendment claim for malicious prosecution requires a plaintiff to prove that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Lopez v. Prince*, No. 11-cv-02352-CMA-BNB, 2012 WL 3277178, at *5 (D. Colo. Aug. 9, 2012). Here, Mr. Carbajal avers that Defendant Hagan "filed false and distorted information before the Court and

judicial officers, and presented perjured testimony at a preliminary hearing regarding an alleged false burglary that was falsely reported by Holguin in July 2010;" that Defendant Hagan "knew that no evidence existed that would link Mr. Carbajal to this burglary and that this abuse was staged by Holguin and her family;" and that "with knowledge that Mr. Carbajal was innocent of this charge and that no reasonable basis existed to charge this false charge, . . . [Defendant] Hagan . . .  filed false charges for burglary that allegedly occurred in July 2010, thereby evincing a complete disregard for the truth." *Third Am. Compl.* [#90] at 9 ¶ 35.

The Court finds that Mr. Carbajal has failed to make anything other than conclusory allegations that Defendant Hagan misrepresented or concealed facts from the prosecutors. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 557).   Although Mr. Carbajal attempts to vaguely assert that Defendant Hagan committed certain "bad acts" in his alleged malicious pursuit of him, he fails to state with any specificity what Defendant Hagan misrepresented or concealed from the prosecutors.  Thus, the Court cannot find that Plaintiff has sufficiently pled the first element of a malicious prosecution claim, i.e., that Defendant Hagan caused the plaintiff's continued confinement or prosecution.  *See Lopez*, 2012 WL 3277178, at *5.

Accordingly, the Court finds that Defendant Hagan is entitled to qualified immunity and that Claim 1, Count 2 against him in his individual capacity for monetary damages[24] should be **dismissed with prejudice**.  *Brereton*, 434 F.3d at 1216-17 (dismissal on the

---

[24]  The Court notes that Mr. Carbajal does not appear to seek any injunctive or declaratory relief against Defendant Hagan.

merits of the complaint is ordinarily with prejudice).

### b.      Rule 12(b)(6): Official Capacity

Because the Court found as part of its qualified immunity analysis as to Defendant Hagan that Mr. Carbajal failed to state a constitutional claim, his claim against Defendant Hagan in his official capacity also fails.  Accordingly, the Court **recommends** that Claim 1, Count 2 against Defendant Hagan in his official capacity be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1216-17.

### 5.      Fourth Amendment: Defendants Dwyer, Kavanaugh, and Berardini

The remaining Defendants against whom Claim 1, Count 2 is brought are private citizens: Dwyer (an employee of Wells Fargo), Kavanaugh (an officer of Wells Fargo), and Berardini (a private attorney).  *See Third Am. Compl.* [#90] at 3 ¶¶ 17-19.  Normally, the Court would next examine whether each was acting under color of state law in connection with this claim, because section 1983 only "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  "[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how . . . wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation omitted).  Thus, the only proper defendants in a section 1983 action are those who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 172

(1961); *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1441, 1447 (10th Cir. 1995).

Four tests are used to determine whether a private individual may be found to be acting under color of state law and, therefore, may be liable pursuant to section 1983. *See Gallagher*, 49 F.3d at 1447. However, the Court need not examine any of those tests at this time, because even if, arguendo, the parties could be found to be acting under color of state law, the Court finds that Mr. Carbajal has not alleged personal participation in the alleged constitutional violation by these three Defendants.

Individual liability pursuant to section 1983 "must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)). A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the described violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).

First, Mr. Carbajal names Defendant Berardini as a defendant against whom this claim is made, but Defendant Berardini is not mentioned anywhere in the remainder of the claim or in any of the paragraphs referenced by Plaintiff as providing supporting allegations for this claim. *See Third Am. Compl.* [#90] at 8-9 ¶ 35, 17-18 ¶¶ 48-53, 36 ¶ 25. Further, examining the first and only sentence in which he is mentioned, the Court finds that Plaintiff has made only vague and conclusory allegations regarding what Mr. Berardini (and the other named Defendants) may have done. *See id.* at 17 ¶ 48 (stating that Defendant Berardini and the other named Defendants "acted knowing, intentional, willful and wanton

[sic] by aiding, abetting, and/or failing to prevent with knowledge thereto, the institution and/or contribution to the institution of groundless charges for burglary against Mr. Carbajal based on Hagan and Watts' fabrication of inculpatory evidence, and the false, distorted, and perjurous testimony presented to official bodies in order to maliciously procure Mr. Carbajal's prosecution and continued confinement for the alleged crime of burglary"). No specific acts are attributed to Defendant Berardini in connection with this claim. *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (stating that "the court . . . should dismiss claims which are supported only by vague and conclusory allegations").

Second, the claim against Defendant Dwyer is insufficient for the same reasons, although she is mentioned one time in addition to the first paragraph. *See id.* at 18 ¶ 52. Neither instance in which she is mentioned, however, provides any detail regarding what specific actions she may have taken which would support a claim of malicious prosecution against her. *See id.* (attributing "unconstitutional acts and/or omissions" to Defendant Dwyer). Thus, the Court finds that Plaintiff provides mere vague and conclusory allegations regarding what Defendant Dwyer may have done.

Third, the claim against Defendant Kavanaugh is insufficient for the same reasons. Although she is mentioned several times in connection with this claim, she is not mentioned in the paragraphs referenced by Plaintiff as providing the bulk of the underlying allegations supporting this claim. *See id.* at 18 ¶ 48-52. Mr. Carbajal's claim against Defendant Kavanaugh appears to be primarily based on her supervisory position with Wells Fargo, and the vague and conclusory allegations against her are utterly unspecific and uniformly group her with multiple other parties, such as, for example: "Watts, Hagan, Mullin, Fuller, Melnick, Kavanaugh and Morrissey each recklessly, knowingly, intentionally, willfully, and

wantonly contributed, procured, and/or continued criminal proceedings against Mr. Carbajal by: (1) systematically manufacturing inculpatory evidence; (2) systematically suppressed and withheld [sic] exculpatory evidence;" etc. *Id.* at 18 ¶ 49.  No specific acts are attributed to her in connection with this claim.

Accordingly, the Court **recommends** that Claim 1, Count 2 against Defendants Berardini, Dwyer, and Kavanaugh be **dismissed with prejudice**.  *Brereton*, 434 F.3d at 1216-17.

**E.     Claim 2: Fraudulent Concealment/Intentional Misrepresentations**

Claim 2 is brought pursuant to 42 U.S.C. § 1983 (First and Fourteenth Amendments) and 12 U.S.C. §§ 501a and 503 by Mr. Carbajal, Ms. Carbajal, and Mr. Leal against the five Prosecutor Defendants and against Defendants Dwyer, Kavanaugh, and Berardini.  *Third Am. Compl.* [#90] at 19 ¶ 56.  Plaintiffs primarily make the following allegations about this claim:

> In 2010 Watts, Dwyer, Holguin, and Morrissey worked together in a joint effort to cover up Holguin and Dwyer's illegal and tortuous [sic] conduct, specifically, the repeated accessing of the Carbajal family's Wells Fargo accounts without consent.  Holguin and Dwyer, following the unsound practices of Wells Fargo, repeatedly misused their position as officers for Wells Fargo to access Mr. Carbajal, Ms. Carbajal and their family's private financial information in direct violation of federal and state law that govern [sic] financial institutions—Gramm-Leach-Bliley Act 15 U.S.C. §§ 6801-6827.  The Carbajal family made diligent efforts to report these abuses.  In response, Dwyer, Holguin, and Watts attacked the Plaintiffs Mr. Carbajal, Ms. Carbajal, and Martin Carbajal with prosecution, threats of prosecution, and through harassment.  Mr. Carbajal was prosecuted vindictively based on a concerted effort of Watts, Holguin, Dwyer, and Morrissey, and a shared goal to manufacture a basis to cover up Mr. Carbajal, Ms. Carbajal, and Martin Carbajal [sic] through prosecution or threats of prosecution solely to prevent

their exposure of Wells Fargo, Holguin, Dwyer, and Selectman's[25] abusive conduct.   In fact, Wells Fargo, Dwyer, Holguin, Kavanaugh, Watts, and others worked together to fraudulently conceal this abusive conduct by hiding audit reports showing Holguin and Dwyer's illegal conduct, and repeatedly lying about these abuses to the courts and the Plaintiffs, as well as falsifying reports to conceal these abuses, merely, to escape liability and deprive the Plaintiffs of their right to redress grievance despite having full knowledge that Holguin and Dwyer were harassing the Carbajal family and improperly accessing their Wells Fargo accounts to exact moneys and property.

. . .

During the course of [the] prosecution [of case no 10CR3824] in 2011, the Prosecution [sic] Watts, Fuller, Mullin, Melnick and Morrissey continued to communicate with Wells Fargo Defendants Holguin, Dwyer, Selectman, and Kavanaugh, and were fully apprised of Holguin and Dwyer's repeated harassment of Mr. Carbajal and his family by illegally accessing their Wells Fargo accounts for ill purposes, which, would certainly subject Wells Fargo, Holguin and Dwyer to civil liability.   But, in an effort to coverup this tortuous [sic] conduct and stonewall litigation, Kavanaugh, Dwyer, and Holguin worked hand in hand with the Prosecution Defendants Watts, Fuller, Bolus,[26] Melnick, Mullin, and Morrissey to conceal Holguin and Dwyer's ill [sic] conduct and agreed to withhold Wells Fargo reports, statements made by Holguin to Kavanaugh, Holguin's resignation through the 2nd JD [sic], and audit reports showing Holguin and Dwyer's illegal accessing of the Carbajal family's accounts.   More [sic], these parties, including the Prosecution repeatedly lied to the public and courts about Holguin and Dwyer's illegal conduct leading everyone to believe that Holguin and Dwyer were not harassing the Carbajal family, causing the state and others to attack the Carbajal family . . . .   These parties each recklessly conspired to hide these tortuous [sic] acts with the intent and understanding to deprive Mr. Carbajal and Ms. Carbajal of their political freedom by fraudulently concealing these abuses and evidence of these abuses, and making the aforementioned misrepresentations, and were clearly heartless and malicious acts taken with complete disregard for Mr. Carbajal and Ms. Carbajal's rights and well being, thus, stonewalling litigation . . . .

. . .

To clarify the abusive attacks on the Plaintiffs were, also, a devious effort to thwart their decision to expose Holguin and Dwyer's illegal conduct.   In fact, in July 2011 when the Plaintiffs began to prepare their civil complaint against

---

[25] It is unclear who "Selectman" is, although he or she appears to possibly be employed by Defendant Wells Fargo in some capacity.   Selectman is not a defendant in this matter.

[26]   It is unclear who "Bolus" is, although he or she appears to possibly be another prosecutor.   Bolus is not a defendant in this matter.

Wells Fargo, Fuller and other prosecution [sic], officials intercepted Mr. Carbajal's civil complaint in an effort to stonewall litigation. These officials for the prosecution in the 2nd JD and Wells Fargo Defendants Kavanaugh, Dwyer, and Selectman, agreed to hide Holguin by coordinating her resignation, which, was a strategic effort by the Prosecution to cover up and suppress evidence of Holguin harassing Mr. Carbajal and entrapment. However, even information of Holguin's resignation was hid [sic] from Mr. Carbajal by the Prosecution, which, was highly material to the litigation of the underlying criminal matter; especially, since after Mr. Carbajal filed a subpoena with Wells Fargo bank the Prosecution immediately sought to quash this subpoena in bad faith, and presented false information to the court alleging that the requested audit reports were in bad faith and a fishing expedition, despite having knowledge of Holguin's and Dwyer's repeated illegal accessing of Mr. Carbajal's and his family's accounts, which, was ultimately quashed due to Mullin and Melnick's fervent effort to assist Wells Fargo, Holguin and Dwyer in concealing this tortuous [sic] conduct.

*Id.* at 4-5 ¶ 24, 8 ¶ 34, 10-11 ¶ 38; *see also id.* at 35 ¶ 23, 38 ¶ 33.

### 1.    12 U.S.C. §§ 501a and 503

Defendants argue that Plaintiffs fail to state a claim under 12 U.S.C. §§ 501a and 503. Section 501a provides a bank and its shareholders with an express cause of action against directors who participate in violations of certain banking provisions. *Branch v. F.D.I.C.*, 825 F. Supp. 384, 408 (D. Mass. 1993). The statute provides:

Should any national banking association in the United States now organized fail within one year after December 23, 1913, to become a member bank or fail to comply with any of the provisions of this chapter applicable thereto, all of the rights, privileges, and franchises of such association granted to it under the National Bank Act [12 U.S.C.A. § 21 et seq.], or under the provisions of this chapter, shall be thereby forfeited. Any noncompliance with or violation of this chapter shall, however, be determined and adjudged by any court of the United States of competent jurisdiction in a suit brought for that purpose in the district or territory in which such bank is located, under direction of the Board of Governors of the Federal Reserve System by the Comptroller of the Currency in his own name before the association shall be declared dissolved. In cases of such noncompliance or violation, other than the failure to become a member bank under the provisions of this chapter, every director who participated in or assented to the same shall be held liable in his personal or individual capacity for all damages which said bank, its shareholders, or any other person shall have sustained in consequence of such violation.

Such dissolution shall not take away or impair any remedy against such corporation, its stockholders, or officers, for any liability or penalty which shall have been previously incurred.

This statute does not provide a private cause of action. *See Blaney v. Fla. Nat'l Bank at Orlando*, 357 F.2d 27, 30 (5th Cir. 1966) (holding that "Congress intended regulatory controls [under 12 U.S.C. § 501a] to be exercised solely by . . . the Comptroller [of Currency] . . . without room or need for supplementary enforcement").  Therefore, Plaintiffs here may not sue Defendants under this statute and their section 501a claim fails.

Turning to 12 U.S.C. § 503, this statute provides:

If the directors or officers of any member bank shall knowingly violate or permit any of the agents, officers, or directors of any member bank to violate any of the provisions of sections 375, 375a, 375b, and 376 of this title or regulations of the board made under authority thereof, or any of the provisions of sections 217, 218, 219, 220, 655, 1005, 1014, 1906, or 1909 of Title 18, every director and officer participating in or assenting to such violation shall be held liable in his personal and individual capacity for all damages which the member bank, its shareholders, or any other persons shall have sustained in consequence of such violation.

With regard to Defendant Berardini, who is an attorney, and the Prosecutor Defendants, there are no allegations that any of them are directors or officers of a bank, as required by the statute, and thus Plaintiffs may not sue them under this statute. *See Motion* [#103] at 12-13.  Plaintiffs do allege that Defendant Dwyer is an officer of Wells Fargo and that Defendant Kavanaugh is a vice president of the same bank. *Third Am. Compl.* [#90] at 3 ¶¶ 17-18.  However, as Defendants Dwyer and Kavanaugh succinctly summarize, section 503:

provides for personal civil liability for knowing violations of four specified sections of the Federal Reserve Act, any of the regulations created under the authority of those sections, and nine sections of the criminal code.  Plaintiffs do not identify which of the thirteen code sections (or the many regulations

created under the authority of the Federal Reserve Act) is the source of their claims for relief.   Plaintiffs claim that Ms. Dwyer and Ms. Kavanaugh participated in the "intentional misrepresentation of facts and/or concealment of material evidence in pending litigation with the intent and understanding to stonewall litigation," but misrepresentation and concealment of evidence in litigation bear[ ] no obvious connection to any of the sections enumerated in § 503.

*Motion* [#119] at 8 (citing *Third Am. Compl.* [#90] at 19 ¶ 56).   The Court agrees.   Plaintiffs fail to connect any of the allegations against Defendants Dwyer and Kavanaugh to any specific statutes and regulations for which 12 U.S.C. § 503 permits plaintiffs to sue for violations.

Accordingly, the Court **recommends** that the portions of Plaintiffs' Claim 2 brought under 12 U.S.C. §§ 501a and 503 be **dismissed with prejudice**.   *Brereton*, 434 F.3d at 1216-17.

## 2.   42 U.S.C. § 1983

Plaintiffs assert section 1983 causes of action titled "fraudulent concealment" and "intentional misrepresentation."   *Third Am. Compl.* [#90] at 19.   However, they have not made it clear how either of these "claims" is a cause of action that may be pursued under section 1983 and either the First or Fourteenth Amendments.   42 U.S.C. § 1983 prohibits violations of constitutional rights under color of state law.   Fraudulent concealment is an equitable tolling principle similar to the related doctrine of equitable estoppel.   *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 830 (2013) (J. Sotomayer, concurring). Fraudulent concealment is also a state law claim in Colorado.   *See, e.g.*, *Just In Case Business Lighthouse, LLC v. Murray*, __ P.3d __, __, 2013 WL 3778184, at *11 (Colo. App. July 18, 2013).   Similarly, intentional misrepresentation is a state law claim.   *See Wessler*

*v. Colonial Nat'l Mortg.*, No. 11-cv-02683-RBJ-KMT, 2012 WL 5949730, at *14 (D. Colo. Aug. 21, 2012).   Neither of these legal claims necessarily impacts constitutional rights, however.   Although Plaintiffs conclusorily mention the First and Fourteenth Amendments in this claim, they make no showing regarding how claims for fraudulent concealment[27] and intentional misrepresentation[28] can be construed to make claims under section 1983.

---

[27]   To the extent that Plaintiffs may have been attempting to assert a state law claim for fraudulent concealment here, the Court notes that this claim would also be subject to dismissal. The elements of fraudulent concealment under Colorado state law are as follows:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp.*, 744 P.2d 1197, 1200 (Colo. 1987). The "material existing fact" that Plaintiffs assert should have been disclosed was Ms. Holguin's resignation from her employer Wells Fargo.  *Third Am. Compl.* [#90] at 19 ¶ 56.  Plaintiffs state that they acted on this information by "voluntarily dismiss[ing] their federal suit against Wells Fargo and pending litigation was delay[ed]."  *Id.*  However, among other problems with this claim, Plaintiffs fail to sufficiently allege how this one fact caused them to dismiss their federal suit against Wells Fargo or why Plaintiffs' alleged lack of knowledge of this fact delayed litigation.  Further, Plaintiffs fail to allege how the dismissal *without prejudice* of their federal suit or the delay in other litigation actually damaged them.  Finally, to the extent that Plaintiffs may be arguing that certain "audit reports and investigational reports" were concealed, the Court first notes that it is not clear from the allegations from whom these reports were concealed, whether from Plaintiffs or from the public and the courts. Second, even were the Court to assume that these documents were concealed from Plaintiffs, they have again failed to sufficiently allege causation and damages.

[28]   To the extent that Plaintiffs may have been attempting to assert a state law claim for intentional misrepresentation, the Court notes that this claim would also be subject to dismissal. The elements of intentional misrepresentation are similar to that of fraudulent concealment:

> The elements of a claim for intentional misrepresentation are . . . : 1) [a] misrepresentation; 2) of material facts; 3) that are false; 4) made with knowledge of the falsity or with indifference to its truth or falsity; 5) the party claiming fraud must have relied on the representation; 6) have had a right to have relied on it; and 7) acted in accordance with the reliance; and 8) in doing so suffer damage.

*Inst. for Prof'l Dev. v. Regis Coll.*, 536 F. Supp. 632, 633 (D. Colo.1982).  The misrepresentations on which Plaintiffs appear to base this claim are Defendants' alleged misrepresentation of "Wells Fargo, Dwyer, and Holguin's repeated and illegal accessing of the Carbajal Family's Wells Fargo

Accordingly, the Court **recommends** that the portions of Claim 2 brought under 42

U.S.C. § 1983 be **dismissed with prejudice**.  *Brereton*, 434 F.3d at 1216-17.

### F.      Claim 3: Unreasonable and/or Excessive Force

Claim 3 is brought by Mr. Carbajal against Defendants Keefer, Mullin, Watts,

Mansfield, and Morrissey.  *Third Am. Compl.* [#90] at 20 ¶ 61.  Specifically, Mr. Carbajal

states that his Fourth and Fourteenth Amendment rights to be free from unreasonable

and/or excessive force were violated.  *Id.*  Mr. Carbajal primarily makes the following

allegations about this claim:

> In December 2010, while Mr. Carbajal was in custody and at the Denver
> District Court, Watts, Mullin, and Keefer conversed, by Mr. Carbajal [sic],
> about the fact that he was proceeding pro se, and agreed to retaliate against
> Mr. Carbajal through the use of force and harassment, and in furtherance of
> this shared mind set to prevent Mr. Carbajal from fairly defending his
> innocence, and in response to Mr. Carbajal's recent litigation in the federal
> courts against Watts, Gruninger, and other Denver law enforcement, Keefer
> began to physically abuse Mr. Carbajal and harass him.  Mr. Carbajal was
> escorted to holding to retrieve his tie, and upon return to the District Court
> holding, as exiting the elevator, Mr. Carbajal bent down to tie his shoes or fix
> his attire, when Keefer kneed Mr. Carbajal in an attempt to cause him injury,
> and thereafter while Mr. Carbajal was tying his tie, Keefer forcefully grabbed
> Mr. Carbajal's arm, then stepped back and jumped at Mr. Carbajal striking
> him repeatedly in the head.  Mr. Carbajal collapsed as Keefer slammed him
> against the wall and forced him to the ground, causing him extreme pain and
> emotional trauma amongst other injuries.    This use of force was
> unnecessary, in that, Mr. Carbajal was not a threat or attempting to engage
> in any prohibited conduct, but was simply tying his tie and preparing to
> defend his case and litigate, which, is a protected right.  Regardless, Keefer

---

accounts" and Defendants' alleged "lie[s] to the public and courts stating that Holguin and Dwyer
never accessed the Plaintiffs' Wells Fargo accounts."  *Third Am. Compl.* [#90] at 19 ¶ 56.  As with
Plaintiffs' claim for fraudulent concealment, the claim for intentional misrepresentation suffers from,
among other problems, issues relating to causation and damages.  Plaintiffs fail to sufficiently allege
why these alleged misrepresentations caused them to dismiss their federal suit against Wells Fargo
or how Plaintiffs' alleged lack of knowledge of these facts delayed litigation.  Further, Plaintiffs fail
to allege how they were damaged by the dismissal *without prejudice* of their federal suit or by the
alleged delay in other litigation.

> attacked Mr. Carbajal with the intent and understanding to injure him and inflict serious pain and emotional trauma, and inhibit his ability to defend his innocence, as well as punish him for filing civil actions against Denver law enforcement, thereby, evincing a reckless disregard for Mr. Carbajal's well being and civil rights.

*Id.* at 6-7 ¶ 30.

### 1.    Fourth Amendment

Mr. Carbajal asserts his excessive force claim pursuant to the Fourth and Fourteenth Amendments but does not explain how each of these constitutional amendments applies to his case.  The Court need not adhere to the legal labels attached by a plaintiff to his claims.  *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  Defendant Keefer asserts that, because Mr. Carbajal was a pretrial detainee at the time of the alleged incident, Plaintiff's excessive force claim should be analyzed under the cruel and unusual punishment clause of the Eighth Amendment.  *See Motion* [#123] at 10, 10 n.3.

The Court disagrees with Defendant Keefer.  The Tenth Circuit has provided explicit guidance as to the appropriate amendment to apply to an excessive force claim.  *See Porro v. Barnes*, 624 F.3d 1322, 1325-26 (10th Cir. 2010).   Excessive force claims may be maintained only under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  *Id.* at 1325. The appropriate amendment and accompanying legal test depends "on where the defendant finds himself in the criminal justice system."  *Id.*  The Fourth Amendment applies to incidents "leading up to and including an arrest of a citizen previously at liberty."  *Id.*  The Eighth Amendment applies to "prisoners already convicted of a crime who claim that their

punishments involve excessive force . . . ."  *Id.* (emphasis in original).   The Fifth or Fourteenth Amendments apply to the period between initial seizure and post-conviction punishment.  *Id.*  "The choice of amendment matters [on] [e]xcessive force claims . . . . [E]ach [amendment] carries with it a very different legal test."  *Id.*

As noted above, the Court appropriately disregards the legal labels applied by a pro se plaintiff when those labels serve to obfuscate the nature of the legal claims asserted.  *See Castro*, 450 U.S. at 381.  In this case, the events underlying this claim occurred after Plaintiff was arrested and before he was convicted.  *See Third Am. Compl.* [#90] at 6-7 ¶ 30.  Thus, based on the allegations provided, there is no question that Mr. Carbajal's claim regarding excessive force falls under, and only under, the Fourteenth Amendment.  *See Porro*, 624 F.3d at 1325-26.   Accordingly, the Court **recommends** that the Fourth Amendment claim under Claim 3 be **dismissed with prejudice**.  *Brereton*, 434 F.3d at 1216-17.

### 2.    Statute of Limitations

Defendants argue in part that Claim 3 is barred by the statute of limitations.  *Motions* [#105] at 7-8; [#123] at 5-7.  The Court has already determined that Plaintiffs' section 1983 claims must have accrued on or after December 8, 2010 in order to meet the statute of limitations.  *See supra* § III.C.1.  Because the allegations underlying Mr. Carbajal's excessive force claim took place on December 8, 2010, the Court finds that Claim 3 is not barred by the statute of limitations.

### 3.    Prosecutorial Immunity

Defendants Mullin, Watts, and Morrissey assert prosecutorial immunity as to this

claim.  Incorporating the law on prosecutorial immunity as set forth in Section III.C. above, and after carefully reviewing the Third Amended Complaint, the Court finds that it is unclear whether this claim against Defendants Mullin, Watts, and Morrissey is entirely based on their conduct during the performance of their official duties as prosecutors, which applies only to "initiating and presenting the government's case" and not to "those actions that are investigative or administrative in nature, including the provision of legal advice outside the setting of a prosecution."  *Mink v. Knox*, 613 F.3d 995, 999 (10th Cir. 2010).  Based on the few allegations presented regarding Defendants Watts' and Mullin's conversation with Defendant Keefer in a hallway of the courthouse (with the alleged approval of Defendant Morrissey), the Court cannot find at this point that they are entitled to prosecutorial immunity.

### 4.    Personal Participation

The Court has already discussed and here incorporates the law regarding personal participation in a section 1983 claim.  *See supra* § III.D.5.  Here, Defendants Mansfield and Morrissey are named,[29] but Plaintiffs have not alleged any specific conduct by them, and thus there can be no affirmative link between their conduct and the described excessive force violation.  Accordingly, the Court **recommends** that Claim 3 against Defendants Mansfield and Morrissey be **dismissed with prejudice**.  *Brereton*, 434 F.3d at 1216-17.

---

[29]  In the statement of Claim 3, Mr. Carbajal mentions other persons who are not presently defendants in this matter, include "White," "Whitman," and "Wilson."  *Third Am. Compl.* [#90] at 20.  He also here mentions "Martinez."  From the context, it appears that this may be a different person from Defendant Martinez.  Regardless, even if this "Martinez" is meant to be Defendant Martinez, and even if Defendant Martinez is meant to be named as part of Claim 3, the Court finds, as it does with Defendants Mansfield and Morrissey, that Mr. Carbajal has failed to sufficiently allege personal participation by Defendant Martinez in connection with Claim 3.

5.      **Qualified Immunity**

The Court incorporates the law regarding qualified immunity discussed above.  *See supra* § III.D.4.a.  The Court first examines whether Plaintiffs have sufficiently alleged a Fourteenth Amendment constitutional violation.  *See Saucier*, 533 U.S. at 200-01.  Here in Claim 3, Mr. Carbajal's "complaint is about arbitrary governmental action, taken without due process, while he [was] detained awaiting trial."  *Porro*, 624 F.3d at 1326.  Thus, the Court looks at three factors to determine whether excessive force was used against him: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor."  *Id.* (quoting *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003)).  "Force inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience may be redressed under the Fourteenth Amendment."  *Porro*, 624 F.3d at 1326 (quoting *Roska*, 328 F.3d at 1243) (internal alterations omitted).

Starting with Defendants Mullin and Watts, although Mr. Carbajal alleges that they were present and speaking to Defendant Keefer beforehand, it is far from clear whether they were present when any of the alleged physical contact between Defendant Keefer and Mr. Carbajal occurred.  *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) (holding that mere presence at the scene was insufficient to show personal participation); *Porro*, 624 F.3d at 1327 (holding that the plaintiff's allegations that certain persons planned to use force against him and assented to it was "based on innuendo and speculation rather than fact").  Even if the Court accepts Plaintiff's vaguely-stated assertion of retaliatory motive by these Defendants, there are no allegations that Defendant Mullin or Defendant Watts personally used any force against Plaintiff or inflicted any injury on him,

and there are no allegations that Defendant Mullin or Defendant Watts had any authority over Defendant Keefer to order him to use force against Mr. Carbajal. *See Porro*, 624 F.3d at 1327 (finding that the defendant did not violate the plaintiff's Fourteenth Amendment right to be free from excessive force because there was no evidence of the defendant's direct personal responsibility for the force used against the plaintiff). The Court therefore finds that Plaintiffs have failed to state a constitutional claim against Defendants Mullin and Watts and that they are therefore entitled to qualified immunity.

Turning to Defendant Keefer, Mr. Carbajal alleges that the following force was used against him without need or provocation: (1) Defendant Keefer kneed him when he bent over to tie his shoe, intending to cause injury; (2) while Mr. Carbajal was tying his tie, Defendant Keefer grabbed his arm, stepped back, jumped at Mr. Carbajal, and struck him repeatedly in the head; (3) Defendant Keefer slammed Mr. Carbajal against the wall and forced him to the ground. *Third Am. Compl.* [#90] at 6 ¶ 30. Regarding the extent of the injury inflicted, Mr. Carbajal does not assert that Defendant Keefer's striking him with his knee caused any injury, but he states that Defendant Keefer's other actions caused him "extreme pain and emotional trauma amongst other injuries." *Id.* Regarding motive, Mr. Carbajal alleges that Defendant Keefer sought to retaliate against him to prevent Mr. Carbajal "from fairly defending his innocence" at the state criminal trial that day and "in response to Mr. Carbajal's recent litigation in the federal courts against Watts, Gruninger, and other Denver law enforcement . . . ." *Id.*

Taken as a whole, Mr. Carbajal's allegations against Defendant Keefer call into question whether there was a need for Defendant Keefer to use force against Mr. Carbajal, given the allegation that Mr. Carbajal did nothing to deserve the use of any force

whatsoever against him and that Defendant Keefer's only motive for doing so was retaliatory and/or malicious.  *See Young v. Brock*, No. 10-cv-01513-WJM-CBS, 2011 WL 7163067, at *7 (D. Colo. Aug. 15, 2011).  The Court notes that Mr. Carbajal has presented no *concrete* facts regarding any alleged injury, and thus fails to fully elucidate one of the factors enumerated for an excessive force violation under the Fourteenth Amendment. Regardless, in precisely the type of analysis at issue here, the Tenth Circuit Court of Appeals has stated:

> How much one due process "factor" may "balance" against another is the subject of little discussion in our case law.  For example, while we've said that due process violations "required that the force be inspired by malice or by excessive zeal that shocks the conscience," *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.24 (10th Cir. 2007) (en banc) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 131-32 (10th Cir. 1990)), we have usually examined an officer's motive in combination with the preceding factors . . .

*Porro*, 624 F.3d at 1327 n.1.  The Court of Appeals did not reach the issue of how to balance the factors, however.  *Id.*  Here, Mr. Carbajal has alleged that the force used against him by Defendant Keefer was "inspired by malice or by excessive zeal."  *Cortez*, 478 F.3d at 1129 n.24.  At this early stage of litigation, the Court finds that on balance, the allegations are sufficient to state a constitutional violation by Defendant Keefer.

With respect to the second prong of the qualified immunity analysis, i.e., whether the right was clearly established at the time of the alleged violation, *see Saucier*, 533 U.S. at 200-01, the Court finds that it was.  The right of an arraigned pretrial detainee to avoid arbitrary government action in the form of excessive force while awaiting trial was clearly established no later than 2003 in the Tenth Circuit.  *See Roska*, 328 F.3d at 1243.  Thus, the Court finds that Defendant Keefer is not entitled to qualified immunity at this stage of the litigation.

Accordingly, the Court **recommends** that Claim 3 against Defendants Watts and Mullin be **dismissed with prejudice**, *see Brereton*, 434 F.3d at 1216-17, and that the Motion to dismiss Claim 3 against Defendant Keefer be **denied** in that regard.

**G.    Claim 4(a), Count 1: Retaliation Based on Threats, Intimidation, and Fraud**

Claim 4(a), Count 1 is brought by Mr. Carbajal and Ms. Carbajal against Defendants Watts, Morrissey, Fuller, Dwyer, Kavanaugh, and Berardini.[30]    *Third Am. Compl.* [#90] at 22 ¶ 69.  In addition to the statements quoted by the Court above in connection with Claim 2, Plaintiffs make the following allegations about this claim:

> Recently, the 2nd JD and its personnel, including Martinez and his clerks have repeatedly stonewalled litigation by manufacturing dismissal of a related matter, and refusing to fairly allow the Plaintiff to protect their rights and redress grievance [sic]. In fact, with absolutely no analysis the Court—District Court Judge Martinez, has denied numerous motions, including, motions for protection [sic] orders, motions for sanctions, motions to amend the complaint, and motions to turn over discovery that was produced pursuant to a subpoena duces tecum directed towards the 2nd District Attorney's Office.  These abuses have grossly inhibited Ms. Carbajal and Mr. Carbajal's ability to fairly redress grievance [sic] against Wells Fargo, Dwyer, Selectman, and Holguin, as well as Morrissey, Melnick, Mullin, Watts, and Fuller, given the relation of Wells Fargo, Holguin, and Dwyer's conduct to the underlying action—10CR3824, and vice versa.  Because of the political relationship of these parties to each other, and a great despite [sic] towards the Plaintiffs Ms. Carbajal and Mr. Carbajal because of their decision to expose the corruption in the 2nd Judicial District—Mansfield, Morrissey, Mullin, Melnick, Watts, Flesche, and Criswell, amongst other state and local officials, who have repeatedly attacked the Plaintiffs and violated their civil rights.  Of particular concern here is Martinez's intimidation and pressuring of Ms. Carbajal to dismiss her complaint against Wells Fargo, simply, because she protested Williams and Carrigan's abusive actions, specifically, the refusal to allow Mr. Carbajal to participate in a deposition of Ms. Carbajal which was designed to sabotage this action, that exposed Wells Fargo, Holguin and Dwyer's tortuous [sic] and illegal conduct.  This, of course, was

---

[30]   The Court assumes merely for purposes of this discussion that Defendants Dwyer, Kavanaugh, and Berardini could be found to have acted under color of state law and thus that a § 1983 claim could properly be asserted against them.

after Williams and Carrigan were directed to allow Mr. Carbajal to participate in depositions premised on the fact that he is a plaintiff in this action against Wells Fargo.  To make matters worse, the Defendants Williams, Carrigan and Martinez worked together with Morrissey and the 2nd JD to violate Mr. Carbajal and Ms. Carbajal's due process rights by destroying and/or suppressing material evidence that belonged to Mr. Carbajal and Ms. Carbajal.  Indeed, the Prosecution Defendants were compelled to turn over all documents in cases numbers 10CR1600, 10CR1576, 10CR3824, 10CR1577, and others, and turned over all of these documents against Mr. Carbajal's objection per order of Martinez, but in an evil attempt to deprive the Plaintiffs of material evidence that impeached Holguin and Dwyer, as well as exposed Wells Fargo's correspondence with the District Attorney's Office, and joint action to hide Holguin and their illegal conduct, including, the criminal conduct of Watts, Mullin, Melnick, and Morrissey in hiding the Denver Police Department's theft of thousands of dollars in case 10CR1577. The Defendants Williams, Carrigan, Martinez, and the Prosecution Defendants agreed to claw back the evidence illegally, in direct violation of CRCP 26 and applicable authority, that requires that all of this evidence in these cases to [sic] be turned over to Ms. Carbajal and Mr. Carbajal, because no objections to this subpoena duces tecum were ever made before this evidence was produced to be reviewed by the Defendants Wells Fargo, Holguin, Williams, Dwyer, and Carrigan, thus, all privileges were waived, and Mr. Carbajal and Ms. Carbajal have a constitutional right to this evidence. This abuse was further exacerbated by Williams' destruction of these files with Carrigan that they had databased [sic].  Each of these Defendants knew that irrespective of what [sic] the nature of this evidence that was produced by the District Attorney Morrissey and his personnel, that the Plaintiffs were entitled to it, but in an evil attempt to stonewall litigation Williams, Carrigan, Morrissey, Martinez, and others agreed to suppress this evidence by illegally clawing it back and hiding it from the Plaintiffs to sabotage this litigation and other pending cases . . . .

*Id.* at 13-15 ¶ 42.

To maintain a retaliation claim under § 1983, a plaintiff must demonstrate: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendants' actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse action was substantially based on the plaintiff's exercise of a constitutionally protected right.  *See Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).  Plaintiffs seem to

assert that the constitutionally protected activity in which they were engaged was the right to access the courts. *See Miskovsky v. Jones*, 437 F. App'x 707, 713 (10th Cir. 2011) (holding that it is a constitutionally protected activity to file pleadings in federal court); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (stating that retaliation for exercise of right of access to courts is a constitutional violation). However, Plaintiffs fail to meet the second element of a § 1983 retaliation claim.

First, the Third Amended Complaint is remarkably unclear about the nature of the underlying litigation in which these alleged abuses allegedly occurred. Importantly, it is not clear which alleged litigation abuses occurred in which lawsuit, and it is therefore also unclear as to which lawsuit(s) Plaintiffs allege they were chilled from prosecuting. Also, aside from stray remarks about Ms. Carbajal's "complaint against Wells Fargo" and the fact that Mr. Carbajal "<u>is</u> a plaintiff in this action against Wells Fargo," the Third Amended Complaint contains no information about the nature of the claims made against Wells Fargo, who "directed" Defendants Williams and Carrigan to allow Mr. Carbajal to participate in Ms. Carbajal's deposition, whether the deposition occurred (with or without Mr. Carbajal), to whom documents were "turned over," how they were "clawed back," and the current status of the litigation. Against this backdrop, the Court finds that Plaintiffs' allegations are too vague and conclusory regarding any injury suffered which was sufficient to chill them from pursuing their case.

Second, as far as the Court can determine, Plaintiffs assert that someone (it is unclear who, although possibly Defendants Williams and Carrigan) refused to allow Mr. Carbajal to participate in a deposition of Ms. Carbajal. Plaintiffs also assert that the Prosecutor Defendants "turned over" all documents in Mr. Carbajal's criminal cases in

response to a subpoena duces tecum.  (The Third Amended Complaint does not identify the person(s) to whom the documents were allegedly "turned over.")  However, Defendant Martinez made a ruling allowing the Prosecutor Defendants and opposing counsel to "claw back" some or all of this evidence.  Plaintiffs believe this ruling was incorrect based on Colorado Rule of Civil Procedure 26 "and applicable authority."[31]  Plaintiffs further allege that Defendants Williams and Carrigan "databased" the documents from Mr. Carbajal's criminal cases and then (liberally reading the Third Amended Complaint) destroyed the hard copies.[32]

The Court cannot find that these circumstances are enough to "chill a person of ordinary firmness" from continuing to engage in civil litigation.  *See, e.g.*, *Green v. Snyder*, 525 F. App'x 726, 730 (10th Cir. 2013) (holding that a prison official's failure to provide grievance forms in a timely fashion would not chill a person of ordinary firmness from continuing to file grievances); *Esparza v. Bowman*, 523 F. App'x 530, 536 (10th Cir. 2013) (holding that a police officer's pursuit of an arrest without probable cause would chill a person of ordinary firmness from continuing to engage in protected activity); *Crosby v. Heil*, 499 F. App'x 764, 767 (10th Cir. 2012) (holding that receiving a low score on one category of a multipart evaluation would not be sufficient to chill a person of ordinary firmness from continuing to engage in a protected activity); *Allen v. Avance*, 491 F. App'x 1, 6 (10th Cir. 2012) (holding that the prospect of punishment severe enough to satisfy the Eighth Amendment is sufficient to chill a person of ordinary firmness from exercising constitutional

---

[31]  As discussed infra in section II.H.2, to the extent that these allegations include alleged wrongful conduct by Judge Martinez, he is absolutely immune from liability therefor.

[32]  There are no allegations that the <u>original</u> documents were destroyed.

rights); *Miskovsky*, 437 F. App'x at 713 (holding that an inmate's transfer to a more dangerous prison would chill a person of ordinary firmness from continuing to pursue civil litigation in federal court); *Shero*, 510 F.3d at 1204 (holding that being properly named as a defendant in a declaratory judgment suit would not chill a person of ordinary firmness from continuing to engage in constitutionally protected activity); *Evans v. Fogarty*, 241 F. App'x 542, 559 (10th Cir. 2007) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) (holding that an official's statements to plaintiffs that it would "become his mission to cause as much pain, damage, and injury as possible to [them]" and that he would "inflict the maximum degree of penalty" if the plaintiffs refused to agree to a temporary injunction were sufficient to chill a person of ordinary firmness from pursuing protected activity)); *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007) (holding that a threat by a deputy sheriff to shoot a taxpayer if he brought any more tax appeals would chill a person of ordinary firmness from continuing to seek redress for allegedly unfair property tax assessments). Plaintiffs' allegations regarding Defendant attorneys' conduct involve only ordinary civil litigation disputes of the type which are repeatedly adjudicated in state and federal court without chilling litigants from proceeding with their cases. The allegations simply do not rise to the level of the type of events that the Tenth Circuit has held would chill a person of ordinary firmness from continuing to pursue civil litigation.

Third, the second element of a retaliation claim requires that Plaintiffs "suffer an injury." *Mimics, Inc.*, 394 F.3d at 847. The Court notes that Plaintiffs do not clearly assert how they were injured by Defendants' actions. The alleged injury *may* be that Plaintiffs "voluntarily dismiss[ed] their federal suit against Wells Fargo and pending litigation was delay[ed]." *Third Am. Compl.* [#90] at 19 ¶ 56. Plaintiffs do not specify which litigation was

delayed, although they may be attempting to assert that the federal court case was delayed by their agreement to dismiss it without prejudice. Regardless, Plaintiffs fail to allege how any alleged delay or dismissal *without prejudice* of their lawsuit(s) actually damaged them. Thus, Plaintiffs have failed to meet the second element of a § 1983 retaliation claim because they have failed to sufficiently allege an injury and have failed to allege conduct by Defendants that would chill a person of ordinary firmness from continuing to engage in civil litigation.

Accordingly, the Court **recommends** that Plaintiffs' Claim 4(a), Count 1 be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1216-17.

## H.     Claim 4(a), Count 2: Retaliation Based on False Arrest for Contempt of Court

Claim 4(a), Count 2 is brought by Ms. Carbajal and Mr. Leal against Defendants Mullin, Melnick, Watts, Fuller, Morrissey, and Mansfield. *Third Am. Compl.* [#90] at 22 ¶ 70. In stating this claim, Plaintiffs primarily rely on the allegations already discussed in connection with Claim 1, Count 1 above, regarding the arrest of Ms. Carbajal and Mr. Leal for contempt of court in July 2011.

### 1.     Prosecutorial Immunity

Defendants Watts, Fuller, Mullin, Melnick, and Morrissey assert prosecutorial immunity as to this claim. Incorporating the law on prosecutorial immunity as set forth in Section III.C. above, and after carefully reviewing the Third Amended Complaint, the Court finds that this claim against Defendants Watts, Mullin, Fuller, Melnick, and Morrissey is based entirely on their conduct during the performance of their official duties as prosecutors

and, therefore, that they are entitled to absolute prosecutorial immunity.[33] *See Imbler*, 424 U.S. at 419 n.13; *Carbajal*, 2011 WL 5006992, at \*2. Accordingly, the Court **recommends** that Claim 4(a), Count 2 against Defendants Watts, Mullin, Fuller, Melnick, and Morrissey be **dismissed with prejudice**. *See Thome*, 2013 WL 1154481, at \*9.

### 2. Judicial Immunity

Defendant Mansfield raises judicial immunity as a complete bar to Plaintiffs' claim against her. *Motion* [#101] at 7-9. The principles of judicial and quasi-judicial immunity apply to individual-capacity claims. *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011) (citation omitted). "[A]bsolute immunity is necessary so that judges can perform their functions without harassment or intimidation." *Van Sickle v. Holloway*, 791 F.2d 1431, 1435 (10th Cir. 1986). Here, Judge Mansfield's actions have been indisputably judicial in nature, as Plaintiffs have only challenged the propriety of Judge Mansfield's actions in connection with rendering decisions on the issues in the underlying case. *See Jones v. Volchok*, 930 F.2d 27, 1991 WL 52687, at \*1-2 (9th Cir. 1991). Further, despite Plaintiffs' ardent contention to the contrary, they have failed to allege facts sufficient to state a claim based on Defendant Mansfield's alleged actions "in the clear absence of all jurisdiction." *See id.* at \*2; *see generally Amoco Prods. Co. v. United States*, 619 F.2d 1383, 1387 (10th Cir.1980)). Therefore, the Court **recommends** that Claim 4(a), Count 2 against Defendant Mansfield in her individual capacity be **dismissed with prejudice** on the basis of absolute judicial immunity. *See Flanders v. Snyder Bromley*, No. 09-cv-01623-CMA-KMT, 2010 WL 2650025, (stating that judicial immunity applies to both

---

[33] For the same reasons cited above in Claim 1, Count 1, the Court finds that the exception to prosecutorial immunity does not apply to Claim 4(a), Count 2.

monetary and injunctive relief sought against a judicial officer); *Brereton*, 434 F.3d at 1216-17.

## I.      Claim 4(a), Count 3: Retaliation Based on "Stonewalling" of Litigation

Claim 4(a), Count 3 is brought by Mr. Carbajal, Ms. Carbajal, and Mr. Leal against Defendants Mullin, Melnick, Morrissey, Mansfield, Martinez, Suthers, Williams, and Carrigan for violation of their First, Fifth, and Fourteenth Amendment rights. *Third Am. Compl.* [#90] at 22 ¶ 71. In stating this claim, Plaintiffs generally rely on the allegations already discussed in each of the prior claims.[34]

### 1.      The Prosecutor Defendants

Defendants Mullin, Melnick, and Morrissey claim they are entitled to prosecutorial immunity on this claim. After carefully reviewing the Third Amended Complaint, the Court finds that this claim against them is based entirely on their conduct during the performance of their official duties as prosecutors, and thus they are entitled to prosecutorial immunity.[35] Accordingly, the Court **recommends** that Claim 4(a), Count 3 be **dismissed with prejudice** as to Defendants Mullin, Melnick, and Morrissey. *Thome*, 2013 WL 1154481, at *9.

### 2.      Defendants Mansfield and Martinez

Defendants Mansfield and Martinez raise judicial immunity as a complete bar to Plaintiffs' claims against them. *Motion* [#101] at 7-9. Defendants Mansfield and Judge

---

[34] In making this claim, Plaintiffs do not direct the Court's attention to any specific portion of the 59-page Third Amended Complaint.

[35] For the same reasons cited above in Claim 1, Count 1, the Court finds that the exception to prosecutorial immunity does not apply to Claim 4(a), Count 3.

Martinez's actions were indisputably judicial in nature here, as Plaintiffs have merely challenged the propriety of their actions in connection with rendering decisions on the issues in the underlying cases. *See Jones*, 1991 WL 52687, at *1-2. Further, despite Plaintiffs' ardent contention to the contrary, they have failed to allege facts sufficient to state a claim based on the judges' alleged actions "in the clear absence of all jurisdiction." *See id.* at *2; *see generally Amoco Prods. Co.*, 619 F.2d at 1387. Therefore, the Court **recommends** that Claim 4(a), Count 3 be **dismissed** against Defendants Mansfield and Martinez in their individual capacities on the basis of absolute judicial immunity. *See Flanders*, 2010 WL 2650025.

### 3.    Defendant Suthers

Defendant Suthers asserts that he is entitled to qualified immunity. *Motion* [#101] at 9-10. Plaintiffs make the following allegations about Defendant Suthers: (1) that he has delayed appellate proceedings by repeatedly petitioning the courts for frivolous extensions of time without an actual need; (2) that he continues to present false and distorted information designed to mislead the appellate court's analysis and resolution of the case; (3) that he submitted an answer brief in the appellate case that was "saturated with fallacies and distortions" such as, for example, "contrary to the Plaintiff's contention, the proceedings in 10CR3824 appear to be proper;" and (4) that:

> [Defendant Suthers] and Holman take great care to cover up the illegal direct file [sic] and numerous filings of shelf cases [sic] and, also, attempt to mislead the court into believing that Mr. Carbajal refused a preliminary hearing, as well as pull away from the obvious fact that these cases that had original jurisdiction [sic] were dismissed for violation of Rule 5 and substantive law, thereby, prohibiting an information from being filed directly without consent, and ignore that the district court never consented to the filing of this information, thus, rendering this action void.

*Third Am. Compl.* [#90] at 13 ¶ 41.

In determining whether Defendant Suthers is entitled to qualified immunity, the Court first examines whether Plaintiffs have alleged a constitutional violation.  To reiterate the elements of a retaliation claim under § 1983, a plaintiff must demonstrate: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendants' actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse action was substantially based on the plaintiff's exercise of a constitutionally protected right.  *See Mimics, Inc.*, 394 F.3d at 847.  Here, Plaintiffs have not clearly articulated the constitutionally protected activity in which they were engaged, although it may be inferred that Mr. Carbajal asserts the right to expeditiously proceed with an appeal of his criminal conviction.  *See Miskovsky*, 437 F. App'x at 713; *Smith*, 899 F.2d at 947.  Ms. Carbajal's and Mr. Leal's alleged constitutionally protected activity remains a mystery, as there is no constitutional right to  appeal someone else's criminal conviction.

The Court concludes that Plaintiffs' allegations do not support the second element of a retaliation claim against Defendant Suthers.  First, the majority of Plaintiffs' allegations here are conclusory, such as their statement that Defendant Suthers has sought frivolous extensions of time from the appellate court.  Second, none of the specifically alleged conduct of Defendant Suthers appears to be of a magnitude that would chill a person of ordinary firmness from pursuing his constitutional rights.  *See supra* § III.G.  Third, Plaintiffs fail to articulate precisely how they have been injured by any of Defendant Suthers' actions.  For example, Plaintiffs do not allege that Mr. Carbajal actually refrained from engaging in the pursuit of appellate proceedings.  Thus, the Court finds that Plaintiffs have failed to

sufficiently allege that Defendant Suthers' conduct meets the second element of a retaliation claim, and Defendant Suthers is entitled to qualified immunity.

Accordingly, the Court **recommends** that Claim 4(a), Count 3 against Defendant Suthers be **dismissed with prejudice**. *Brereton*, 434 F.3d at 1216-17.

### 4.    Defendants Williams and Carrigan

Plaintiffs allege that Defendants Williams and Carrigan would not allow Mr. Carbajal to participate in a deposition of Ms. Carbajal; that they had been directed by an unknown person to allow Mr. Carbajal to participate in the deposition of Ms. Carbajal; that they destroyed and/or suppressed material evidence belonging to Mr. Carbajal and Ms. Carbajal by "claw[ing] back" evidence of documents in other cases (10CR1600, 10CR1576, 10CR3824, 10CR1577) even though they failed to object to a subpoena duces tecum before documents were produced; and that they destroyed hard copies of documents after they were entered into a (presumably electronic) database. *Third Am. Compl.* [#50] at 14-15 ¶ 42. To reiterate once more the elements of a retaliation claim: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendants' actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse action was substantially based on the plaintiff's exercise of a constitutionally protected right. *See Mimics, Inc.*, 394 F.3d at 847. Although Plaintiffs do not clearly articulate the protected constitutional activity at issue here, the Court infers that Plaintiffs assert the right to file and prosecute a civil lawsuit. However, among other problems with this claim,[36] there is no indication that

---

[36]  The Court assumes, but does not find, for purposes of this discussion that Defendants Williams and Carrigan acted under color of state law.

Defendants Williams and Carrigan's actions "chilled" Plaintiffs from continuing to engage in any particular activity.  While Plaintiffs conclusorily assert that these actions harmed them in other ways, Plaintiffs fail to meet the second element of a § 1983 retaliation claim, i.e., that the defendants' actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity.  *See id.*

Accordingly, the Court **recommends** that Plaintiffs' Claim 4(a), Count 3 be **dismissed with prejudice** for failure to state a claim.[37]  *Brereton*, 434 F.3d at 1216-17.

## J.    Claim 4(b), Count 1: Due Process Regarding Probable Cause

---

[37]  To the extent that Plaintiffs may have been attempting to assert state law claims for retaliation under Counts 1, 2, and/or 3 of Claim 4(a), the Court notes that Plaintiffs do not state the legal basis for any such claim.  The Court has not found a Colorado common law retaliation claim that is arguably applicable to the allegations of this case.  *See, e.g., Ferris v. Bakery, Confectionery & Tobacco Union, Local 26*, 867 P.2d 38, 44 (Colo. App. 1993 (citing *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1371-73 (Colo. App. 1989) (stating that a "state claim based upon retaliation by employer against an employee who files a workers' compensation claim is not preempted by § 301" and "public policy requires recognition of a common law claim by an employee for wrongful discharge if the employee is discharged in retaliation for pursuing a workers' compensation claim").  It appears, rather, that Plaintiffs *may*, if anything, be attempting to bring the state law portion of their retaliation claim under Colo. Rev. Stat. § 18–8–706.  That statute has three elements:

> First, there must be a communicated intent to commit harm or injury to another's person, property, or rights by the commission of unlawful acts.  Second, the threat must be directed toward a person protected by the statute.  Third, the threat must be made for retributive or retaliatory purposes based on the victim's membership in one of the protected classes.  To retaliate means "to put or inflict in return . . . a wrong[;] . . . to return like for like: make requital; esp [ecially]: to return evil for evil."  Retribution is "the dispensing or receiving of reward or punishment according to the deserts of the individual . . . [or] something given or exacted in recompense."  Each of these terms thus defines retaliation under the statute as occurring for a specific reason: that is, the defendant must specifically intend to inflict punishment or exact revenge on a person as a result of that person's actual or perceived relationship to criminal proceedings.  Thus, the statute requires that the prohibited threat be made for retributive or retaliatory purposes.

*People v. Hickman*, 988 P.2d 628, 640 (Colo. 1999) (internal citations omitted).  However, this is a *criminal* statute, and Plaintiffs fail to allege any related available *civil* cause of action under Colorado state law.  Regardless of what Plaintiffs may have been attempting to assert here, if anything, the Court notes once again that it is not the obligation of the Court to construct a legal theory on Plaintiffs' behalf.  *See Whitney*, 113 F.3d at 1173-74.

Claim 4(b), Count 1 is brought by Mr. Carbajal against Defendants Mullin, Melnick, Watts, Morrissey, Hagan, Simpson, and Lopez.  *Third Am. Compl.* [#90] at 25 ¶ 82.  The allegations underlying this claim revolve around the time when Mr. Carbajal was a pretrial detainee, primarily those events occurring in August and September 2010.  *See id.* at 30-32 ¶¶ 4-14.

Defendants assert that this claim is barred by the statute of limitations.  *See, e.g.*, *Motion* [#123] at 5-7.  As discussed previously, any § 1983 claim must have accrued on or after December 8, 2010.  Here, every indication in the Third Amended Complaint is that the events underlying this claim occurred in August and September 2010, and certainly that all of them occurred before December 8, 2010, the date of Mr. Carbajal's criminal trial in case number 10CR1600.  *See* [#90] at 25 ¶ 82, 30-32 ¶¶ 4-14.  Thus, this claim is barred by the statute of limitations.  Accordingly, the Court **recommends** that Claim 4(b), Count 1 against Defendants Mullin, Melnick, Watts, Morrissey, Hagan, Simpson, Lopez, and Hagan be **dismissed with prejudice** on the basis of the statute of limitations.  *Gee*, 627 F.3d at 1181.

## K.    Claim 4(b), Count 2: Due Process Regarding Judge Mansfield's "Bent Mind"

Claim 4(b), Count 2 is brought by Mr. Carbajal, Ms. Carbajal, and Mr. Leal against Defendant Mansfield.  *Third Am. Compl.* [#90] at 17 ¶ 48.  Defendant Mansfield raises judicial immunity as a complete bar to Plaintiffs' claims against her.  *Motion* [#101] at 7-9. Here, Judge Mansfield's actions in connection with this claim were indisputably judicial in nature, as Plaintiffs have challenged the propriety of Judge Mansfield's actions in connection with rendering decisions on the issues in the underlying cases. Further, despite Plaintiffs' ardent contention to the contrary, Plaintiffs have failed to allege facts sufficient

to state a claim based on Defendant Mansfield's alleged actions "in the clear absence of all jurisdiction."   Therefore, the Court **recommends** that Claim 4(b), Count 2 against Defendant Mansfield be **dismissed with prejudice**.   *See Flanders*, 2010 WL 2650025; *Brereton*, 434 F.3d at 1216-17.

**L.     Claim 4(b), Count 3: Due Process Based on Loss of Evidence**

Claim 4(b), Count 3 is brought under the First, Seventh, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 by Mr. Carbajal, Ms. Carbajal, and Mr. Leal against Defendants Watts, Morrissey, Dwyer, Kavanaugh, Wells Fargo, Williams, Carrigan, Berardini, and Martinez.[38]   *Third Am. Compl.* [#90] at 26 ¶ 84.   In support of this claim, Plaintiffs rely primarily on the allegations already discussed in connection with Claim 2 and Claim 4(a), Count 1.   *See id.* at 26 ¶ 84 (citing to *id.* at 4 ¶ 24, 8 ¶ 34, 10 ¶ 38, 13 ¶ 42). Plaintiffs assert that these Defendants participated in the suppression and/or destruction of material evidence, including audit reports, Wells Fargo internal investigation reports, and the prosecution's complete case files that were turned over to the Wells Fargo Defendants in response to a subpoena duces tecum.   *Id.* at 26 ¶ 84.   Plaintiffs further assert that Defendants extorted and intimidated Martin Carbajal with threats of false prosecution and imprisonment if he reported Ms. Holguin and Defendant Dwyer's alleged illegal conduct. *Id.*

At the outset, Plaintiffs fail to clearly articulate how these instances violated their First, Seventh, or Fourteenth Amendment rights.   The core of Plaintiffs' claim appears to be denial of access to courts, which is generally a Fourteenth Amendment due process

---

[38]   The Court assumes solely for purpose of this discussion, without so deciding, that the private Defendants were acting under color of state law.

claim.  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("[T]he right of access [to courts] is founded on the due process clause and guarantees the right to present to a court of law allegations concerning the violation of constitutional rights.").  However, denial of access to courts "is also one aspect of the First Amendment right to petition government for redress of grievances."  *Id.*  The Seventh Amendment provides for one's right to a jury trial in civil cases.  *See, e.g.*, *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 3035 n. 13 (2010).

The Supreme Court has stated that "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).  Here, Plaintiffs have failed to articulate how they believe each of these alleged violations by these Defendants impacted their civil case against Wells Fargo and its employees.  For example, what information was alleged contained in the audit reports and internal investigation reports?  What information was allegedly suppressed and what information was allegedly destroyed?[39]  What did Martin Carbajal allegedly know that others did not know with respect to the actions of Wells Fargo employees, and how did he know this information?  How were documents allegedly produced in response to a subpoena suppressed or destroyed?  Further, how does this lost evidence specifically relate to the causes of action and remedies that the Carbajal family pursued against Wells Fargo?  The United States Supreme Court has mandated that "the predicate claim be described well enough [in the complaint] to apply the 'nonfrivolous' test and to show that the 'arguable'

---

[39]  For example, Plaintiffs merely allege that the audit reports were "hidden."  *Third Am. Compl.* [#90] at 5.

nature of the underlying claim is more than hope." *Harbury*, 536 U.S. at 416.  In addition, "because these backward-looking cases are brought to get relief unobtainable in other suits, the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." *Id.*  Plaintiffs have failed to provide allegations in the complaint that are sufficient to give these Defendants fair notice of the claim against them.

Accordingly, the Court **recommends** that Plaintiffs' Claim 4(b), Count 3 be **dismissed with prejudice**. *Brereton*, 434 F.3d at 1216-17.

## M.   Claim 5: Abuse of Process

As presented by Plaintiffs, Claim 5 for abuse of process consists of three "counts." Claim 5, Count 1 is by Mr. Carbajal against Defendants Mullin, Melnick, Watts, Morrissey, Lopez, and Simpson. *Third Am. Compl.* [#90] at 24 ¶ 76.  The allegations underlying this claim revolve around the time when Mr. Carbajal was a pretrial detainee, primarily those events occurring in August and September 2010.  *See id.* at 5-6 ¶¶ 25-29, 7-8 ¶ 33, 24 ¶ 76.  Claim 5, Count 2 is by Mr. Carbajal against Defendants Mullin, Melnick, Watts, and Morrissey. *Id.* at 24 ¶ 77.  The allegations underlying this claim revolve around when Mr. Carbajal was a pretrial detainee, primarily those events occurring in August and September 2010.  *See id.* at 5-6 ¶¶ 25-29, 7-8 ¶ 33, 24 ¶ 77.  Claim 5, Count 3 is by Mr. Carbajal against Defendants Mullin, Melnick, Watts, Morrissey, Hagan, and Mansfield. *Id.* at 24 ¶ 78.  The allegations underlying this claim revolve around events primarily occurring in July 2010.  *See id.* at 8-9 ¶ 35, 24 ¶ 78.

The parties assert that these claims are barred by the statute of limitations.  *See,*

*e.g.*, *Motion* [#123] at 5-7.   As discussed above, any § 1983 claim must have accrued on or after December 8, 2010.  Here, every indication in the Third Amended Complaint is that the events underlying these claims primarily occurred in July, August, and September 2010, and that certainly all occurred before December 8, 2010, the date of Mr. Carbajal's criminal trial in case number 10CR1600.  *See* [#90] at 25 ¶ 82, 30-32 ¶¶ 4-14.  Thus, these claims are all barred by the statute of limitations.[40]   Accordingly, the Court **recommends** that Plaintiffs' Claim 5, Count 1 against Defendants Mullin, Melnick, Watts, Morrissey, Lopez, and Simpson; Claim 5, Count 2 against Defendants Mullin, Melnick, Watts, and Morrissey; and Claim 5, Count 3 against Defendants Mullin, Melnick, Watts, Morrissey, Hagan, and Mansfield be **dismissed with prejudice** on the basis of the statute of limitations.  *Gee*, 627 F.3d at 1181.

## N.    No Leave to Amend

The Court has recommended above that, for those causes of action where Plaintiffs have failed to state a claim, dismissal should be with prejudice.  The dismissal of an action "pursuant to Rule 12(b)(6) is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *accord Brierly v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986) (affirming a district court decision to dismiss with prejudice an action brought under 42 U.S.C. § 1983); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("where a plaintiff is unable to allege any fact sufficient to support [his] claim, a complaint should be dismissed with prejudice"); *Tepper*

---

[40]   To the extent that Plaintiffs may have been attempting to assert three state law claims for abuse of process, such claims would also be barred by the statute of limitations.  *See Gonzales v. City & Cnty. of Denver*, 998 P.2d 51, 53 (Colo. App. 1999) (stating that under Colorado law, a claim for abuse of process has a two-year tort statute of limitations).

*v. Van Dam*, 974 F.2d 1345, 1992 WL 219037, at *3-4 (10th Cir. 1992) (relying on *Okusami*, *Brierly*, and *Cortec* to affirm dismissal of an action with prejudice). However, due to heightened concerns when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Brereton*,  434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997))).

Even as courts are careful to protect the rights of pro se plaintiffs, they often find that granting the opportunity to amend would be futile. *See, e. g.*, *Arocho*, 367 F. App'x at 955 (describing as "unique" circumstances in which a plaintiff would be afforded an opportunity to amend his complaint); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues" (emphasis added)); *but see Gee*, 627 F.3d at 1186 (10th Cir.  2010) ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." (citations omitted)).

However, in this matter, Plaintiffs have now had four opportunities to present facts to support their causes of action arising from the events at issue. *See Compl.* [#1]; *Am. Compl.* [#33]; *Second Am. Compl.* [#85]; *Third Am. Compl.* [390].  Plaintiffs have had reasonable and adequate opportunities in which to amend previous complaints. The Court

also notes that Mr. Carbajal and Ms. Carbajal are both seasoned federal court pro se litigants in the District of Colorado.  Because Plaintiffs have failed to assert allegations in support of the claims regarding which the Court recommends dismissal, and because they have had multiple opportunities to amend, the Court finds that granting leave to amend again would be futile.

Accordingly, the Court recommends that the dismissed causes of action and Defendants be dismissed with prejudice.[41]  *See Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (stating that dismissal with prejudice is appropriate where the plaintiff's amended pleadings fail to cure the deficiencies in his claims); *Meadow at Buena Vista, Inc. v. Ark. Valley Pub. Co.*, No. 10-cv-02871-MSK-KMT, 2012 WL 502688, at *9 (D. Colo. Feb. 15, 2012) (dismissing causes of action with prejudice where Third Amended Complaint failed to assert additional facts sufficient to support the plaintiff's claims); *Stouffer v. Eulberg*, No. CIV-09-320-C, 2009 WL 4724272, at *1 (W.D. Okla. Dec. 7, 2009) (dismissing cause of action with prejudice where the plaintiff was given the opportunity to amend to correct errors but failed to do so in his amended pleading); *Bridges v. Two Unnamed FBI Agents*, No. CIV-08-0759-HE, 2009 WL 1227489, at *2 (dismissing causes of action with prejudice where the plaintiff was afforded multiple opportunities to address pleading deficiencies but failed to adequately do so).

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Motion [#123] be **GRANTED in part and DENIED in part**, as outlined above, and that Motions [#101,

---

[41] This of course does not include those causes of action and Defendants dismissed without prejudice on the basis of subject matter jurisdiction and under Rule 8(a), as outlined above.

#103, #105, #114, #119] be **GRANTED**.[42]

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 20, 2014, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[42] Should this Recommendation be adopted in full by the District Judge, the only remaining claim will be Mr. Carbajal's Claim 3 for excessive force in violation of the Fourth Amendment against Defendant Keefer in his individual capacity. Thus, no claim asserted by Ms. Carbajal or Mr. Leal will survive, and they should be dropped as Plaintiffs from this action.