IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03231-PAB-KLM

DEAN CARBAJAL,

    Plaintiff,

v.

ANDREW KEEFER, in his individual capacity,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on Deputy Keefer's Motion for Summary Judgment [Docket No. 293].[1] The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Because plaintiff is proceeding *pro se*, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

**I. BACKGROUND**[2]

On December 8, 2010, plaintiff Dean Carbajal was in the custody of the Denver Sheriff Department ("DSD") at a Denver City and County courthouse before the start of

---

[1] On January 8, 2016, defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(c) for failure to exhaust administrative remedies. Docket No. 256. On April 27, 2016, the magistrate judge denied defendant's motion without prejudice. Docket No. 284. The magistrate judge determined that defendant's motion "should be converted into a motion for summary judgment." *Id*. at 4. The magistrate judge explained that denial without prejudice was appropriate because "it is important that both parties have a full and fair opportunity to present to the Court all relevant material in order to determine whether Plaintiff exhausted his administrative remedies." *Id*. at 8.

[2] The following facts are undisputed unless otherwise indicated.

a trial. Docket No. 293-1 at 1. According to a report filed on December 8, 2010 by defendant Andrew Keefer, a DSD deputy, defendant allowed plaintiff several opportunities to put on his tie before taking him to the courtroom, but, after plaintiff began the process again, defendant instructed plaintiff to leave the cell, which plaintiff refused to do. *Id.* Defendant attempted to escort plaintiff from the cell, but plaintiff "violently pulled his arm away . . . while screaming 'don't touch me!'" *Id.* Defendant stated in his report:

> I secured inmate Carbajal by his shirt at the collar and guided him to the wall at the back of the cell. I then instructed him to get on the ground and pulled him downward to the floor. Inmate Carbajal attempted to push off of the ground and I secured him to the floor by placing my elbow and forearm on his upper back. I used my radio to call for assistance from hall patrol in the [] detention area. I secured inmate Carbajal's right arm behind his back and applied the 'goose neck' technique to his right hand.

*Id.* After securing plaintiff, defendant stated that two other officers responded and handcuffed plaintiff before escorting plaintiff out of his cell. *Id.*

According to plaintiff:

> On December 8, 2010, while preparing for trial, I was tying my tie when Deputy Keefer lunged at me and began to strike me repeatedly in the head and slammed me against the wall and then slammed on the ground, causing me extreme pain amongst other injuries.

Docket No. 298 at 35, ¶ 2. Defendant argues that summary judgment is appropriate because plaintiff failed to exhaust his administrative remedies by following the DSD grievance procedure.

### A. The Denver Sheriff Department Grievance Process

The DSD has a multi-step grievance process, which is described in the DSD

inmate handbook.³ Docket No. 293-2. The handbook informs inmates that "[y]ou will be required to file your grievance within 10 calendar days of the incident in which you are aggrieved." Docket No. 293-2 at 2. A grievance can be submitted on an "Inmate Grievance Form," which is a "triplicate carbon document that included a top (white) copy, middle (yellow) copy, and a back (pink copy)," Docket No. 293-3 at 2, ¶ 5, or an inmate can submit a grievance on "plain paper." Docket No. 293-2 at 3. With respect to the inmate grievance forms, the grievance procedure informs inmates that, "[i]f you did not keep the pink copy, you will have a copy returned to you after the Operations Unit has affixed the time stamp." Docket No. 293-2 at 3. The "grievance form should be addressed to Operations," and a grievance "must provide" the date and time of the incident, a specific statement detailing the "act or condition giving rise to the grievance," the "specific remedy for the grievance," and a signature accompanied by the inmate's housing location and book-in number. *Id.*

After submitting a grievance, the handbook provides that "[t]he Operations staff will provide a written dated response within 10 working days of receipt of the grievance." *Id.* If an inmate is still aggrieved, the procedure informs the inmate: "you may write a sealed letter to the Division Chief stating your specific grievance and **all** previous steps you have taken. . . . The Division Chief will provide a written, dated response within 10

---

³Defendant does not allege that plaintiff received a copy of the inmate handbook. *See* Docket No. 293 at 2-7, ¶¶ 1-33. Plaintiff does not dispute that he was aware of the grievance procedure, *see* Docket No. 298, but, even if he claimed he did not receive the inmate handbook, he would be required to follow the DSD grievance procedure. *See Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 273 (10th Cir. Oct. 2, 2003) (unpublished) ("[E]ven accepting plaintiff's allegation that he was unaware of the grievance procedures, there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement.").

3

working days of receipt of the appeal." *Id.* (emphasis in original). If the inmate is still aggrieved, the policy provides that "[y]ou may also write a personal letter to the Director of Corrections. . . . The Director will make the final resolution and will provide a written, dated response within 10 working days of receipt of the appeal." *Id.*

Grievances alleging serious misconduct can be handled in a different manner. *See* Docket No. 302-2 at 1. DSD department order 4810.1D, which was in effect on December 8, 2010, states that "[g]rievances filed on matters that fall under the investigative jurisdiction of the Internal Affairs Bureau [] will be referred to that unit and will be handled as complaints." *Id.* According to the Internal Affairs Bureau's ("IAB") procedures, "all allegations of unnecessary/excessive force . . . involving Denver Sheriff Department officers" are to be investigated by the IAB. Docket No. 298-1 at 109. However, when an inmate files a grievance alleging serious misconduct, a DSD supervisor is assigned to conduct an initial investigation and route the grievance appropriately. Docket No. 302-1 at 2, ¶ 7; *see also* Docket No. 298 at 72-73 (describing the routing process for grievances). After DSD staff investigates, the grievance matter may be referred to IAB. Docket No. 302-1 at 2, ¶ 7.

While DSD policy provides that grievances alleging serious misconduct be referred to the IAB, *see* Docket No. 302-1 at 2, ¶ 7; Docket No. 298 at 72-73, plaintiff has submitted evidence to show that the referral system is defective. *See, e.g.,* Docket No. 298 at 58-135. According to a report issued by the Office of the Independent Monitor ("OIM") in 2013, of the fifty-four grievances alleging serious misconduct filed from January 1, 2011 to June 30, 2013, only nine resulted in IAB investigations. Docket

4

No. 298 at 75. Of those nine investigations, only three were the result of referred grievances. *Id.* According to the OIM, "other serious grievances were not investigated at all, at the jails or otherwise." *Id.*

### B. Plaintiff's Grievance(s)

The parties dispute whether plaintiff submitted grievances in accordance with DSD policy. Defendant provides an inmate grievance form received by DSD on December 21, 2010 – 13 days after plaintiff alleges that defendant used excessive force against him. Docket No. 293-4. The grievance form appears to have been signed by plaintiff and provides a date and time of incident as "Dec. 8th-24th, 2010." The grievance states:

> I have Been in punished and taken of my general population priviledges since Dec. 8, 2010. Without justification or notice. I was tying my tie as I prepared to go to trial and an officer pulled my arm & squeez me, and then pushed & began to strike me in the back of my head. I never resisted nor did I antagonize the officer. It has now been 13 days and I have received to justification for the abuses taken against me.

*Id.* DSD received the greivance on December 21, 2010. *Id.* DSD never responded to plaintiff's grievance. Docket No. 293-5 at 2, ¶ 6. While plaintiff has submitted grievances related to other matters, *see* Docket No. 293-8 (collecting eight grievances related to other matters submitted on inmate grievance forms), the December 21, 2010 grievance is the only grievance in DSD records related to defendant's use of force against plaintiff. Docket No. 293-5 at 2, ¶¶ 5-7.

Plaintiff states that the December 21, 2010 grievance in the DSD records "appears to be written" by him, but has been altered. Docket No. 298 at 37, ¶ 13. According to plaintiff, the date of the document "is altered to read 'Dec. 8th-24, 2010.'

5

and more a '1' has been placed in front of the 3 on the sixth line, which was not there originally." *Id.* The effect of this alteration, plaintiff claims, is to make it appear that his grievance was filed on December 13, 2010 instead of on December 3. *Id.* According to plaintiff, the December 21, 2010 grievance is not the original copy because he would not have listed a date through December 24, which "had not even come to pass." *Id.*

In addition to alleging that the December 21 grievance was modified, plaintiff states that he submitted inmate grievances on "the 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 20th, 21st, 22nd, 23rd, 24th, 25th, 26th of December, and up into January 2011." Docket No. 298 at 35-36, ¶ 5. Plaintiff states that none of the grievances he filed were time-stamped or returned to him. *Id.* Plaintiff does not have copies of any of the grievances he claims he submitted and does not explain why he was unable to retain the pink copies of his grievances. Plaintiff states that, because he was "[c]oncerned staff were throwing these grievances away," he wrote four letters to various DSD staff documenting his complaints. *Id.* at 36, ¶ 6; *see also id.* at 26-33. Plaintiff has submitted copies of the letters he allegedly sent. *Id.* at 26-33. Based on those materials, on December 13, 2010, plaintiff mailed a letter to Sergeant Sich "or supervisory staff"; on December 16, 2010, plaintiff mailed a letter to Division Chief Deeds; on December 26, 2010, plaintiff mailed a letter to Director Gary Wilson; and on January 24, 2011, plaintiff sent a second letter to Director Wilson. *Id.* Each of the letters discussed defendant's use of force against plaintiff and plaintiff's attempts to file numerous grievances. *Id.* Plaintiff states that each of the letters was "mailed internally within sufficient time of the alleged incident to satisfy any of the required procedural

6

deadlines." *Id.* at 36, ¶ 6. The copies of plaintiff's letters attached to his motion are not marked to show that they were received by DSD.[4] *See id.* at 26-33.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Exhaustion is an affirmative defense and defendant bears the burden of proving that plaintiff failed to exhaust his remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007). "'The defendant must demonstrate that no disputed material fact exists regarding the affirmative defense asserted' when the evidence is viewed in the light most favorable to the plaintiff." *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d

---

[4]During the relevant time, inmates were not allowed to make copies of materials. Docket No. 293-3 at 4-5, ¶ 10. To explain his possession of the copies, plaintiff states that "[e]ach time that these grievances were drafted, I would hide this grievance in between pleadings that I had submitted for copies, so that I was able to obtain a copy without DSD staff knowing that I was copying my grievance letters." Docket No. 298 at 38, ¶ 17.

7

726, 746 (10th Cir. 2014) (quoting *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011)). "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."[5] *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014); *see also Jackson v. Hoffman*, 2014 WL 4123733 at *6 (S.D. Ill. Aug. 21, 2014) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)).

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001); *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## III. ANALYSIS

Defendant Keefer claims that plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a). Docket No. 293 at 9. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement aims to "reduce the

---

[5]Questions related to exhaustion are not triable to a jury. *See Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

8

quantity and improve the quality of prisoner suits by (1) allowing prison officials an opportunity to satisfy the inmate's complaint – thus obviating the need for litigation; (2) filtering out some frivolous claims; and (3) creating an administrative record that facilitates review of cases that are ultimately brought to court." *Whitington v. Ortiz*, 472 F.3d 804, 807 (10th Cir. 2007) (citing *Porter*, 534 U.S. at 524-25).

### A. Applicability of the PLRA

Plaintiff argues that the exhaustion requirement of the PLRA does not apply in this case for two reasons. First, plaintiff argues that, by failing to raise exhaustion earlier in the proceedings, defendant has waived it as a defense. Docket No. 298 at 12. Second, plaintiff argues that, because the alleged misconduct occurred during the pendency of a criminal trial, the PLRA does not apply.[6] Docket No. 298 at 12-13.

With respect to plaintiff's first argument, that defendant has waived the exhaustion requirement, the Tenth Circuit has explained that exhaustion is mandatory. *See Beaudry v. Corrections Corporation of America*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003) (affirming finding that defendant did not waive exhaustion as a defense by waiting to raise it "on the eve of trial" and stating that "[t]he statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court was not authorized to dispense with it"). While plaintiff cites contrary authority, Docket No. 298 at 12 (citing *Bonilla v. Janovick*, 2005 WL 61505, at *1 (E.D.N.Y. Jan. 7, 2005); *Orange v. Strain*, 2000 WL 158328, at *4 (E.D. La. Feb. 10, 2000)), these out of circuit cases do not

---

[6]Plaintiff raised both of these arguments in his objection to the magistrate judge's recommendation dismissing defendant's motion to dismiss without prejudice. Docket No. 285. As discussed below, the Court finds that these argument are without merit and plaintiff's objection [Docket No. 285] is overruled.

9

undermine the holding in *Beaudry* that the defense of exhaustion is not subject to waiver. In making his waiver argument, plaintiff also asserts that "the doctrine of laches is applicable here and acts as a bar to this defense." Docket No. 298 at 13. However, plaintiff fails to allege any of the elements of the doctrine. *See Herald Co. v. Seawell,* 472 F.2d 1081, 1099 (10th Cir. 1972) (stating that laches requires three elements: "(1) full knowledge of the facts; (2) unreasonable delay in the assertion of available remedy; and (3) intervening reliance by and prejudice to another"). The Court rejects the argument that the doctrine of laches bars defendant's argument regarding exhaustion of remedies.

Plaintiff next argues that defendant's misconduct is not governed by the PLRA. Docket No. 298 at 13. The PLRA applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA's exhaustion requirement "extends to pretrial detainees because the definition of a prisoner includes any person . . . detained in any facility who is accused of . . . violations of criminal law." *Peoples v. Gilman*, 109 F. App'x 381, 383 (10th Cir. 2004) (citation omitted). The authority cited by plaintiff does not contradict this finding. *See* Docket No. 298 at 13 (citing *Boyd v. Driver*, 579 F.3d 513, 514 n.2 (5th Cir. 2009) (holding that "perjury and tampering with evidence in a federal court proceeding" do not fall within the ambit of the PLRA); *Johnson v. Quinn*, 1999 WL 116222, at *3 (N.D. Ill. Feb. 26, 1999) (claims against officials in the state's attorney office did not fit under PLRA because they were not affiliated with the department of corrections)). Plaintiff

10

does not dispute that defendant was a correctional officer and that he was in DSD custody on December 8, 2010; plaintiff's allegations against defendant thus fall within the scope of the PLRA. Docket No. 298 at 35, ¶ 2.

Accordingly, the Court finds that the exhaustion requirement of the PLRA applies to plaintiff's claim against defendant in this case.

### B. Exhaustion

Defendant bears the initial burden of showing that there is no disputed fact regarding plaintiff's exhaustion of his remedies. *Kramer*, 743 F.3d at 746. In order to meet his burden, defendant offers evidence to show that plaintiff did not submit a grievance until 13 days after the incident in which he was aggrieved. Docket No. 293-4. Because the inmate grievance procedure requires inmates to submit a grievance within 10 days of the underlying incident, Docket No. 293-2 at 3, defendant claims that plaintiff failed to exhaust his remedies. In support, defendant provides an affidavit from Sergeant Joseph E. Garcia, Jr., who serves as the custodian of records for the DSD. Docket No. 293-5 at 1, ¶ 1. Sergeant Garcia states that he conducted a search of DSD records and did not find any records related to appeals or other materials submitted by plaintiff in connection with the December 8, 2010 incident. *Id.* at 2-3, ¶¶ 7-9.

Plaintiff makes three arguments: first, that the inmate grievance procedure does not apply because he filed a "complaint," not a "grievance," which falls under the jurisdiction of the IAB, Docket No. 298 at 14-20; second, that he did in fact comply with DSD procedure by filing numerous grievances, which staff refused to properly log, Docket No. 298 at 20; and third, that DSD obstructed plaintiff and advised him that further complaints were unnecessary, rendering the exhaustion requirement

11

inapplicable.

### 1. IAB Jurisdiction

Plaintiff argues that the DSD grievance procedure is irrelevant because his allegations fall within the exclusive jurisdiction of the IAB. Docket No. 298 at 14. DSD department order 4810.1D provides that "[g]rievances filed on matters that fall under the investigative jurisdiction of the [IAB] will be referred to that unit and will be handled as complaints." Docket No. 302-2 at 1. Before being routed anywhere, however, inmate grievances are assigned to DSD staff. *See* Docket No. 298 at 72. DSD staff determines where to route grievances: for example, medical grievances are routed to medical staff and grievances related to food quality are routed to kitchen staff. *Id.* Staff use their discretion and experience to determine where to route a particular grievance. *Id.* Accordingly, while the grievance procedure directs DSD staff to route serious allegations of misconduct to IAB, that determination is discretionary and occurs only after DSD staff conduct an initial investigation. Docket No. 302-1 at 2, ¶ 7. The Court finds that plaintiff was bound to follow the DSD grievance procedure because it applies to all initial grievances, irrespective of the relief requested.[7]

---

[7] Plaintiff argues that the DSD's failure to refer allegations of serious misconduct to the IAB foreclose the defense of non-exhaustion and that remedies were unavailable because only the IAB could address his complaint. Docket No. 298 at 15-17. However, plaintiff does not provide any evidence that only the IAB could remedy his grievance. In contrast, defendant provides evidence that DSD staff were empowered to provide medical services, mediate the conflict between the inmate and the DSD deputy, relocate the inmate, or reassign the deputy. Docket No. 302-1 at 2-3, ¶¶ 9-10. In the absence of any evidence suggesting that DSD could not provide relief to defendant, he was required to exhaust the grievance process. *See also Booth v. Churner*, 532 U.S. 731, 741 (2001) (inmates are required to exhaust administrative remedies even where they seek monetary relief unavailable through the grievance process).

Plaintiff also argues that the failure to provide clear guidelines to DSD staff resulted in disarray and rendered remedies unavailable. Docket No. 298 at 17. Plaintiff's argument that the DSD grievance system was in disarray is belied by the record. Defendant provided eight grievances filed by plaintiff contained in DSD records. Docket No. 293-8. Of those eight grievances, only plaintiff's complaint against defendant went unanswered. *Id.* The failure to provide clear guidelines to DSD staff on routing grievances may have prevented plaintiff's complaint from being referred to IAB, but it did not prevent staff from investigating and providing relief in other settings.

### 2. Plaintiff's Grievance(s)

Plaintiff argues that, even if DSD procedure required him to exhaust his remedies, he did in fact comply with the grievance procedure by submitting numerous inmate grievances and several "grievance letters." Docket No. 298 at 20-21.

The Court finds, viewed in a light most favorable to plaintiff, there is a genuine issue of material fact as to whether plaintiff exhausted his administrative remedies. While defendant has presented an inmate grievance form purportedly showing that plaintiff did not file a timely grievance, Docket No. 293-4, plaintiff claims that the grievance form has been modified. Docket No. 298 at 37, ¶ 13. As the author of the grievance, assuming he submitted it, plaintiff is competent to know whether it has been altered. In addition, plaintiff claims that he filed at least seven timely grievances, Docket No. 298 at 35-36, ¶ 5, which creates a dispute of fact surrounding whether plaintiff filed a timely grievance.

In the alternative, defendant argues that summary judgment is appropriate because plaintiff did not file an appeal of any grievance filed in a timely fashion. Docket

No. 293 at 12-18. However, plaintiff has submitted copies of letters that he claims he sent in order to appeal the tacit denial of his grievances. *See* Docket No. 298 at 26-33. Defendant argues that DSD did not receive any of these letters, Docket No. 293 at 13, but plaintiff is free to offer testimony that he timely and appropriately submitted the grievance letters. *See* Docket No. 298 at 38, ¶¶ 16-17. Defendant additionally argues that the grievance letters suggest that "they were prepared in order to rebut Deputy Keefer's contention that he failed to exhaust his administrative remedies." Docket No. 293 at 14. Defendant offers no authority for making such a finding on a motion for summary judgment. The Court finds that plaintiff has presented evidence demonstrating a genuine issue of material fact over whether he timely appealed his grievance.

The Court finds that there are disputes of fact that preclude summary judgment.

### 3. *DSD Obstruction*

As a final argument, plaintiff states that he was placed in segregation, which obstructed his ability to exhaust his remedies. Docket No. 298 at 21. Plaintiff provides no evidence that inmates placed in solitary confinement do not have access to grievance forms or otherwise have the ability to pursue administrative remedies. *See* Docket No. 293-3 at 4, ¶ 6 (stating that inmates in segregated units have access to the grievance process). To the extent plaintiff's argument is that DSD staff threatened or intimidated him into not exhausting his remedies, plaintiff must show: "(1) that the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from

14

lodging a grievance or pursuing the part of the prison administrative process that the inmate failed to exhaust." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). Plaintiff filed at least one grievance and alleges that he filed many more. Docket No. 298 at 35-36, ¶ 5. Accordingly, plaintiff does not provide any evidence that he was deterred from pursuing his administrative remedies.

Similarly, plaintiff argues that DSD staff misled him about his need to continue to file grievances. Docket No. 298 at 21. Prison officials who "'encourage, or even invite, noncompliance with written procedure' cannot then turn around and use the deviation as evidence of a failure to exhaust." *Pavey*, 170 F. App'x at 8 (quoting *Curtis v. Timberlake*, 436 F.3d 709, 712 (7th Cir. 2005)). Plaintiff's argument fails in light of the evidence he offers. According to plaintiff's mother, on December 22, 2010, DSD staff called her and told her "it was unnecessary to keep calling the Sheriff's Department and reporting [the December 8, 2010 incident], because it had already past and that Mr. Carbajal was being returned to general population." Docket No. 298 at 43, ¶ 4.[8] The alleged statements were made after plaintiff had already failed to submit a timely or procedurally proper grievance, do not refer to the inmate grievance process, and were not made to plaintiff. *Id.* Even if the statements made by DSD staff to plaintiff's mother constituted misrepresentations, plaintiff does not allege that he relied on those statements. *See* Docket No. 298 at 35-36, ¶ 5 (stating that plaintiff continued to filed grievances "up into January 2011"); *id.* at 33 (grievance letter allegedly sent by plaintiff on January 24, 2011).

---

[8]Plaintiff's exhibit 6 shows only page two of Ms. Carbajal's declaration. Docket No. 298 at 42-43.

15

Accordingly, plaintiff was not prevented from or misled about the need to complete the administrative process.

## IV. CONCLUSION

As noted earlier, supra, p. 8 n.5, the issue of exhaustion of administrative remedies is resolved by the Court, not a jury. Because the Court has identified issues of fact that preclude summary judgment, it is necessary to schedule an evidentiary hearing to determine whether plaintiff has exhausted his administrative remedies. *Jackson*, 2014 WL 4123733 at *6. Accordingly, it is

**ORDERED** that Deputy Keefer's Motion for Summary Judgment [Docket No. 293] is granted in part and denied in part. It is further

**ORDERED** that an evidentiary hearing will be set.

DATED September 27, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge